MARKEY *v.* S. S. PETER & PAUL'S PARISH.

1. WORKMEN'S COMPENSATION—PUBLIC RELIEF—EARNING CAPACITY.
Public relief does not establish earning capacity within meaning
of statute providing that compensation payable to an injured
employee ''when added to his wage-earning capacity after the
injury in the same or another employment shall not exceed his
average weekly earnings at the time of such injury,'' but
when the person is withdrawn from jurisdiction of public body
which has duty of furnishing him relief and is given work by
another public agency which has not such obligation, work for
the latter is done under relationship of employer and employee
(2 Comp. Laws 1929, § 8427 [e]).

2. SAME—PUBLIC WORKS ADMINISTRATION—COMPENSATION PAYABLE.
Since the purpose of the public works administration was to fur-
nish employment in lieu of relief, employment with it created
relationship of employer and employee within meaning of
workmen's compensation act provision that compensation pay-
able to injured employee added to wage-earning capacity after
injury shall not exceed his average weekly earnings at the time
of such injury (2 Comp. Laws 1929, § 8427 [e]; 15 USCA,
§§ 721, 728; Emergency Relief Appropriation Acts of 1935,
1936 [49 Stat. 115, 1608, 15 USCA, § 728, note]; Executive
Order 7064 [40 USCA, § 414, note]).

3. SAME—TIMEKEEPER FOR PUBLIC WORKS ADMINISTRATION—EARN-
ING CAPACITY.
Employment as timekeeper by public works administration which
had lasted for over a year at time petition to stop compensa-
tion was denied *held*, to have the incidents of ordinary perma-
nency and established earning capacity in a recognized regular
employment within meaning of provision of workmen's com-
pensation act setting forth that compensation payable when
added to wage-earning capacity after injury should not exceed
average weekly earnings at time of injury (2 Comp. Laws 1929,
§ 8427 [e]).

4. SAME—COMPENSATION PAYABLE—REDUCTION PRO TANTO.

Proviso of workmen's compensation act setting forth that compensation payable when added to wage-earning capacity after injury should not exceed average weekly earnings at time of injury was designed to relieve employer from payment of compensation *pro tanto,* if and while employee has capacity to earn sufficient wages in the same or another occupation whether or not he works (2 Comp. Laws 1929, § 8427 [e]).

5. SAME—CONSTRUCTION OF STATUTE—REHABILITATION.

Proviso of workmen's compensation act setting forth that compensation payable when added to wage-earning capacity after injury should not exceed average weekly earnings at time of injury should not be construed to interfere with efforts on part of employer or employee to rehabilitate latter nor to penalize him if an attempted rehabilitation is unsuccessful (2 Comp. Laws 1929, § 8427 [e]).

6. SAME—EARNING CAPACITY—OPPORTUNITY.

Workmen's compensation act, in providing that compensation payable, when added to employee's wage-earning capacity after injury in the same or other employment, shall not exceed his average weekly earnings at the time of such injury does not thereby limit such wage-earning capacity to wages actually earned after injury, since to do so would encourage malingering and compensation is not a pension, nor is it limited to earning capacity if employee is unable to obtain employment because of the injury unless opportunity, within his capacity, is made to appear (2 Comp. Laws 1929, § 8427 [e]).

7. SAME—EARNING CAPACITY—QUESTION OF FACT.

Determination of what an employee's wage-earning capacity is after injury is to be made by the department of labor and industry in the exercise of its sound judgment and discretion as a question of fact (2 Comp. Laws 1929, § 8427 [e]).

8. SAME—EARNING CAPACITY—SET-OFF AGAINST AWARD OF COMPENSATION.

When an employee accepts work and receives wages therefor in a recognized regular employment with the ordinary conditions of permanency, such as timekeeper with public works administration for over a year, and has established a present earning capacity equal to wages received previous to injury regardless of his physical condition, it is the intent of proviso of workmen's compensation act setting forth that compensation pay-

able when added to wage-earning capacity after injury should not exceed average weekly earnings at time of injury to reduce or eliminate compensation award by way of a sort of set-off against it (2 Comp. Laws 1929, § 8427 [e]).

9. SAME—LOSS OF EMPLOYMENT—RESTORATION OF COMPENSATION—CHANGE OF CONDITION.

Employee who has lost employment and seeks to have compensation for injury, stopped because of employment, restored because of its loss need not show an actual change of physical condition since to do so would discourage attempts at rehabilitation by imposing an unfair hazard thereon under proviso of workmen's compensation act setting forth that compensation payable when added to wage-earning capacity after injury should not exceed average weekly earnings at time of injury (2 Comp. Laws 1929, § 8427 [e]).

10. SAME—EARNING CAPACITY AFTER ACCIDENT—STOPPING COMPENSATION.

Fact that employee actually earns more money as timekeeper for public works administration, a recognized employment with incidents of ordinary permanency, than he did when employed by defendant employer *held*, to entitle latter to award stopping compensation (2 Comp. Laws 1929, § 8427 [e]).

11. SAME—ORDERS OF DEPARTMENT OF LABOR AND INDUSTRY—BURDEN OF PROOF.

To administer properly proviso of workmen's compensation act setting forth that compensation payable when added to wage-earning capacity after injury should not exceed average weekly earnings at time of injury, order of department of labor and industry stopping or reducing compensation for sole reason that employee is engaged in a wage-earning employment should specifically state such reason and not cast an undue and unjust burden on employee of showing a changed physical condition when employment ceases (2 Comp. Laws 1929, § 8427 [e]).

Appeal from Department of Labor and Industry. Submitted June 16, 1937. (Docket No. 113, Calendar No. 39,450.) Decided September 1, 1937.

Aloysius Markey presented his claim for compensation against S. S. Peter & Paul's Parish, employer,

and American Employers Insurance Company, insurer, for injuries sustained in defendant's employ. On petition to stop compensation. Award to plaintiff. Defendants appeal. Reversed and remanded.

*Joseph P. Friske,* for plaintiff.

*H. Monroe Stanton,* for defendants.

FEAD, C. J.   Plaintiff, assistant janitor for defendant, with wages of $10 per week, was injured and received workmen's compensation at $7 per week for a time, later reduced to $5 per week. From November, 1935, he has worked as timekeeper for the public works administration, a Federal agency, with salary of $70 per month, increased in April, 1936, to $25 per week. In June, 1936, defendant filed petition to stop or reduce plaintiff's compensation under the proviso in 2 Comp. Laws 1929, § 8427 (e) :

"Provided, The compensation payable, when added to his wage-earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury."

Under the testimony, the department would be justified in holding that plaintiff has not recovered from his injury. He said he was in dire financial straits and, while not actually on relief, would have had to accept public aid if he had not obtained the job as timekeeper. The department held that his employment with the public works administration did not establish an earning capacity under the statute because it was, in fact, public relief and did not create the relationship of employer and employee. *Vaivida* v. *City of Grand Rapids,* 264 Mich. 204 (88 A. L. R. 707). January 8, 1937, it entered award continuing compensation until further order.

It will be noted that in the *Vaivida* and succeeding cases to like effect, *Oleksik* v. *City of Detroit,* 268 Mich. 697, *Davenport* v. *City of Detroit,* 268 Mich. 374, *Cody* v. *City of Negaunee,* 270 Mich. 336, *Wagner* v. *Ontonagon County Emergency Welfare Relief Commission,* 272 Mich. 64, some or all of such incidents were present, as that the work was merely incidental to relief; wages were based upon the necessities of the person and his family rather than upon the worth of the work; the person was engaged in "made" work; work was provided for rehabilitation; or that it was done for the public body which was charged with the duty of furnishing the relief. When, however, the person is withdrawn from the jurisdiction of the public body which has the duty to furnish him relief and is given work by another public agency which has not such obligation, work for the latter is done under the relationship of employer and employee. *McLaughlin* v. *Antrim County Road Commission,* 266 Mich. 73; *Konopka* v. *Jackson County Road Commission,* 270 Mich. 174 (97 A. L. R. 552).

The public works administration was established under the Federal emergency relief act of 1933 (48 Stat. 55, chap. 30 [15 USCA, §§ 721, 728]). The act did not confine aid to alms but permitted the administrator to establish agencies which could afford assistance either by way of relief or upon a business basis. *In re Dissolution of Community Co-operative Industries, Inc.,* 279 Mich. 610.

The public works administration was recognized by the emergency relief appropriation act of 1935, 49 Stat. 115 (15 USCA, § 728, note), and the emergency relief appropriation act of 1936, 49 Stat. 1608 (15 USCA, § 728, note), both of which appropriated money for "useful projects." The act of 1935

authorized the president to fix different rates of wages for various types of work but which would not "affect adversely or otherwise tend to decrease the going rates of wages paid for work of a similar na- ture." And the act of 1936 provides that the rates of pay for persons engaged upon useful projects "shall be not less than the prevailing rates of pay for work of a similar nature."

Under the act of 1935, executive order 7064 (40 USCA, § 414, note), provided that, so far as practicable, the persons employed were to be selected from those receiving relief, but the act of 1936 gives others the same eligibility for employment as applicants whose names had appeared on relief rolls.

It is clear that it was the purpose of the public works administration to furnish employment in lieu of relief and that the relation of employer and employee was established therein as completely as in the case of any other employment by the Federal government.

It is further contended that plaintiff's employment as timekeeper is temporary and establishes no earning capacity. *Smith* v. *Pontiac Motor Car Co.*, 277 Mich. 652; *Hood* v. *Wyandotte Oil & Fat Co.*, 272 Mich. 190. Timekeeper is a recognized regular job in ordinary business and plaintiff's employment has the incidents of ordinary permanency. It had continued more than a year when the award denying the petition to stop compensation was entered. It is subject to the same conditions which govern any other employment—continuance of the work by the employer and continuance of the hiring of the employee, the termination of neither of which conditions can be foretold at this time. It may cease soon or last a long time. It cannot be called temporary within the purview of those decisions.

This leads us to the construction of the words "wage-earning capacity" in the proviso. The proviso was adopted to relieve the employer of the payment of compensation *pro tanto,* if and while the employee has capacity to earn sufficient wages in the same or another occupation, *MacDonald* v. *Great Lakes Steel Corp.,* 268 Mich. 591, whether or not he works, *Hood* v. *Wyandotte Oil & Fat Co., supra.*

After a disabling injury, wage-earning capacity may be recovered by an improvement in physical condition. If the employee's compensation were stopped or reduced by reason of improvement in physical condition, resulting in an increased wage-earning capacity, it would be necessary, on petition to restore compensation, that he prove a change of condition for the worse.

A construction of the statute upon the basis of physical condition alone, however, would have an untoward effect. Often faithful employees, with little or no actual wage-earning capacity, are given employment by their employers at the same wages from benevolent motives. Sometimes employers furnish the employment for the purpose of ultimately escaping their compensation obligations. Sometimes an employee has an opportunity to try work of a lighter or different nature and the trial may develop an actual wage-earning capacity or may show him unfitted for labor. The statute ought not to be construed to interfere with efforts on the part of the employer or employee to rehabilitate the latter nor to penalize him if an attempted rehabilitation is not successful.

In discussing the statute, this court has said:

"What is meant by the term 'wage-earning capacity after the injury?' It is not limited to wages actually earned after injury, for such a holding

would encourage malingering and compensation is not a pension. On the other hand mere capacity to earn wages, if 'nondescript' by reason of injury, affords no measure unless accompanied by opportunity to obtain suitable employment. * * *

"An injured person may recover to the point where he can, if favored, perform special service, if such is obtainable, but, if none can be obtained because of his injury, his capacity to work and earn cannot be measured against his incapacity. If his injury isolates him from employment then, of course, he is not to be held to have capacity to work and earn wages. If his injury has reduced his capacity to work and relegated him to the rating of 'odd lot' or 'nondescript' workers for whom labor openings are extremely limited, then opportunity, within his capacity, should be made to appear." *Hood* v. *Wyandotte Oil & Fat Co., supra.*

"This present earning capacity of the injured employee is not necessarily to be determined by what he may be paid by his employer during the time a petition to stop compensation is contemplated or pending, nor by what he may be paid for made work, or out of sympathy for his family, or as a reward for long and faithful service to his employer, or because of a temporary demand on the part of the employer for labor, or by pay for odd jobs which the injured employee may be able to pick up, but it is to be determined as a question of fact by the department of labor and industry in the exercise of its sound judgment and discretion based upon all the facts in the case." *Smith* v. *Pontiac Motor Car Co., supra.*

When an employee accepts work and receives wages therefor in a recognized regular employment, with the ordinary conditions of permanency, as here, there is no room for argument that he has not thereby established a present earning capacity equal to

such wages, whatever may be his physical condition. It is the intent of the quoted proviso that, while he is thus earning wages, they shall operate to reduce or eliminate the compensation award by way of a sort of set-off against it, if they are sufficient in amount. *MacDonald* v. *Great Lakes Steel Corp., supra.*

But when, after such reduction or stopping of compensation by reason of employment and not because of a recovery of physical capacity to work, the employee seeks to have compensation restored by reason of the fact that he has lost his employment, it would be grossly unjust to require him to make a showing of actual change of physical condition. Such a ruling would discourage attempts at rehabilitation by imposing an unfair hazard thereon. In *MacDonald* v. *Great Lakes Steel Corp.*, 274 Mich. 701, it was held that where a disabled employee had had employment, compensation was stopped therefor and he had lost his employment, the department would be justified in holding that the employment had established a *prima facie* earning capacity but—"the ruling does not require the employee to show a change of physical condition after his discharge. Nor does it prevent his showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances."

In the case at bar, the fact that plaintiff is actually earning more money than his wages at the time of his injury, in a recognized employment, renders the proviso operative and entitles the employer to an award stopping compensation.

In order to administer the statute properly, it is apparent that the department of labor and industry should make specific, instead of formal, orders stopping or reducing compensation. Ordinarily such an

award is *res judicata* of the physical condition of the employee and compensation could not be resumed without a showing of change of physical condition. Consequently when the department reduces or stops compensation for the sole reason that the employee is engaged in a wage-earning employment and without reference to his physical condition, the reason for the award should be specifically stated in order that an undue and unjust burden is not cast upon the employee when his employment ceases.

Award set aside and cause remanded to the department for entry of award stopping compensation, in accordance with this opinion.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.