PULLEY *v.* DETROIT ENGINEERING & MACHINE COMPANY.

1. WORKMEN'S COMPENSATION—FINDING OF FACT BY APPEAL BOARD.
   Finding by workmen's compensation appeal board that work to which employee had been assigned after injury to hand was a "regularly recognized occupation and not made work," being a finding of fact substantiated by the record, is binding on the Supreme Court (CL 1948, § 413.12).

2. SAME—WEEKLY WAGE LOSS.
   Workmen's compensation act provides for payment of a weekly benefit to an injured employee of 66-2/3% of his "weekly

REFERENCES FOR POINTS IN HEADNOTES

[1, 7, 12] 58 Am Jur, Workmen's Compensation §§ 535, 536.
[2–6, 8, 9] 58 Am Jur, Workmen's Compensation § 284 *et seq.*
[10, 11] 58 Am Jur, Workmen's Compensation § 440.

wage loss," up to an amount which, when added to his current wage-earning capacity, would not exceed his average weekly earnings at the time of injury (CLS 1961, § 412.10; CL 1948, § 412.11).

3. SAME—WAGE LOSS—RIGHT TO BENEFIT—EARNING CAPACITY.

An employee can be injured and disabled to a degree and yet suffer no weekly wage loss compensable under the workmen's compensation act because he is earning, or is shown to be able to earn, an amount equal to or greater than that which he was earning at the time of his injury (CL 1948, § 412.11).

4. SAME—EARNING CAPACITY—FACT ISSUES—NATURE OF WORK PERFORMED—EXTENT OF DISABILITY—FUNCTION OF WORKMEN'S COMPENSATION DEPARTMENT.

The method of determining an injured employee's earning capacity under the workmen's compensation act is a complex of fact issues concerned with the nature of work performed and nature and extent of disability and wages earned to be established by the workmen's compensation department (CL 1948 and CLS 1961, §§ 411.1–417.14a).

5. SAME—EARNING CAPACITY—WAGES FOLLOWING INJURY.

The bare elements of proof of what an injured employee was paid for employment following injury does not establish his "earning capacity" under the workmen's compensation act (CL 1948, § 412.11).

6. SAME—PURPOSE OF ACT.

The whole purpose of the workmen's compensation act would be vitiated if the bare elements of proof of what a disabled employee was paid following injury were construed as establishing his "earning capacity" (CL 1948, § 412.11).

7. SAME—EARNING CAPACITY—QUESTION OF FACT—WORKMEN'S COMPENSATION DEPARTMENT—APPEAL.

The determination of an injured employee's earning capacity after injury is a fact issue reposed by legislative enactment in the workmen's compensation department and, if supported by any competent evidence, it will not be disturbed by the Supreme Court on appeal (CL 1948, § 413.12).

8. SAME—EARNING CAPACITY—OPPORTUNITY.

Workmen's compensation act, in providing that compensation payable, when added to employee's wage-earning capacity after

injury in the same or other employment, shall not exceed his average weekly earnings at the time of such injury does not thereby limit such wage-earning capacity to wages actually earned after injury (CL 1948, § 412.11).

9. SAME—INJURED EMPLOYEE—RECOGNIZED REGULAR EMPLOYMENT.
Acceptance of work and receipt of wages therefrom in a recognized regular employment, with the ordinary conditions of permanency, establishes a present earning capacity of an injured employee equal to such wages, whatever his physical condition (CLS 1961, § 412.10; CL 1948, § 412.11).

10. SAME — ESTABLISHED WAGE-EARNING CAPACITY — BURDEN OF PROOF — INABILITY TO OBTAIN EMPLOYMENT.
Plaintiff who had established a wage-earning capacity equal to or greater than the wages he was receiving at time of his injury, and who voluntarily left this employment became the moving party when he filed an application for additional benefits and had the burden of proving that his inability to obtain employment was the result of his injury and disability (CLS 1961, § 412.10; CL 1948, § 412.11).

11. SAME—ASSUMPTION AS TO EARNING CAPACITY.
The prima facie assumption that earning capacity, once established, continues after the discharge of the employee, does not prevent his showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances (CLS 1961, § 412.10; CL 1948, § 412.11).

12. SAME—FINDINGS OF APPEAL BOARD—ESTABLISHED WAGE-EARNING CAPACITY—REGULARLY RECOGNIZED OCCUPATION—EVIDENCE.
Finding of workmen's compensation appeal board that plaintiff who lost a hand in an industrial accident had established his wage-earning capacity in a regularly recognized occupation, and that plaintiff offered no proof of having been rejected for work by any prospective employer because of work limitations attributable to his injury *held*, supported by the record CL 1948, §§ 412.11, 413.12).

Appeal from Court of Appeals, Division 1; J. H. Gillis, P.J., McGregor and Watts, JJ., affirming the Workmen's Compensation Appeal Board. Sub-

mitted June 8, 1966.   (Calendar No. 4, Docket No. 51,334.)   Decided October 4, 1966.

1 Mich App 346, affirmed.

Robert H. Pulley, Jr., presented his claim for compensation against Detroit Engineering & Machine Company for total disability resulting from the loss of a hand.   Award by hearing referee was reversed by Workmen's Compensation Appeal Board.   Order affirmed by Court of Appeals.   Plaintiff appeals. Affirmed.

*Markle & Markle* (*Fergus Markle,* of counsel), for plaintiff.

*Lacey & Jones* (*T. F. Felker* and *E. R. Whinham, Jr.,* of counsel) for defendant.

O'Hara, J.   This is an appeal upon leave granted from a decision[1] of the Court of Appeals.   The decision affirmed a denial of compensation made by the workmen's compensation appeal board.   The board's order reversed the decision of the hearing referee, which had required payment to the appellant of compensation benefits based on a finding of total disability.

It is stipulated that at the time of his injury, appellant was engaged in common labor.   He was operating a punch press.   The press malfunctioned, injuring plaintiff severely and resulting in the amputation of his left hand diagonally from the second metacarpal.   It is beyond discussion that he has lost the industrial use of the hand.   He was paid for the specific loss period of 215 weeks.   In the meantime, he was re-employed by appellee in a clerical capacity

[1] 1 Mich App 346.

at a wage equal to or greater than that he had earned previous to his injury. The record leaves no doubt that the employer-appellee made every possible effort toward plaintiff's rehabilitation. The work to which appellant was assigned was found by the appeal board to be "a regularly recognized occupation and not made work." This finding of fact is binding upon us.[2] Citations to cases would be superfluous.

After some time, appellant became dissatisfied with his work. He found, he testified, that its clerical nature made him nervous. With medical support for this contention, he asked for and received a leave of absence. He went to his birthplace in Tennessee. He did not return at the end of his leave, which expired on or about April 20, 1960. He stayed on in Tennessee until March of 1961. In that year he worked briefly in a garage as an assistant service manager. So far as the record discloses this job terminated for lack of work. Upon his return to Detroit, the place of his injury and prior employment, he sought work only from his former employer. He was advised no work was available, and thereupon he filed a claim for additional benefits. The referee found total disability and consequent payment until further order of the department.

The Michigan workmen's compensation law[3] provides for the payment of a weekly benefit to an injured employee claiming partial or total disability, under sections 9 or 10 of part 2 of the act, of 66-2/3% of his average weekly wages before the injury but in no case does it permit such claimant to receive benefits which, when added to his current

---

[2] See CL 1948, § 413.12 (Stat Ann 1960 Rev § 17.186).

[3] PA 1912 (1st Ex Sess), No 10, as amended (CL 1948 and CLS 1961, §§ 411.1–417.14a, as last amended by PA 1965, No 44 [Stat Ann 1960 Rev and Stat Ann 1965 Cum Supp §§ 17.141–17.230(4)]).

wage-earning capacity, would exceed his average weekly earnings at the time of injury.[4]  His wages before the injury are a known factor.  What he is "able" to earn thereafter is a matter of proof and an issue of fact.  Because our law does not award benefits for industrial injury and consequent disability alone, a body of case law has of necessity grown up interpreting the statutory term "weekly wage loss."  Presumably and actually, an employee can be injured, disabled to a degree, and yet suffer no weekly wage loss because he is shown to be able to earn an amount equal to or greater than that which he was earning at the time of his injury.  In many instances from the highest motives of desire to rehabilitate the employee and restore him as a wage-earning member of society, some employers have retained injured employees in new jobs within their capacity to perform.  It is not difficult to perceive, however, that an ill-intentioned employer desirous of avoiding compensation payments could rehire an injured and disabled employee, establish his capacity to earn as much or more than before his injury and terminate his employment.  Then, if the bare elements of proof of what the employee was paid were construed as establishing his "earning capacity" the whole purpose of the act would be vitiated.

Thus, the method of determining the employee's earning capacity, as that term is used in the act, is a complex of fact issues which are concerned with the nature of the work performed and the continuing availability of work of that kind, and the nature and extent of the disability and the wages earned.  This determination by legislative enactment is reposed in the workmen's compensation department.  Justice WIEST stated the proposition thus:[5]

[4] CL 1948, § 412.11 (Stat Ann 1960 Rev § 17.161).
[5] *Hood* v. *Wyandotte Oil & Fat Co.*, 272 Mich 190, at p 194.

"We do not weigh the evidence. The weighing scale is in other hands and, even if we think it out of balance, we cannot re-weigh."

We properly do prescribe and have prescribed the statutory interpretation of "wage-earning capacity." It appears in *Hood, supra,* and it was quoted with approval in *Pique* v. *General Motors Corporation,* 317 Mich 311, at pp 316, 317:

" 'What is meant by the term "wage-earning capacity after the injury?" It is not limited to wages actually earned after injury, for such a holding would encourage malingering and compensation is not a pension. On the other hand mere capacity to earn wages, if "nondescript" by reason of injury, affords no measure unless accompanied by opportunity to obtain suitable employment. Opportunity is circumscribed by capacity of the injured and openings to such a wage earner.' "

Under the foregoing rule, the appeal board found as follows:

"On May 27, 1957, this employer manifested commendable concern over plaintiff's misfortune and offered him a clerical job in its planning and scheduling department. *This was a regularly recognized occupation and not made work.*" (Emphasis supplied.)

The following excerpt from the record describes the work in question:

"*Q.* And what exactly was he performing?

"*A.* In the automobile business you ship parts to automobile assembly plants all over the United States. His job was to record those shipments by assembly plants on our records so that we would know whether we were up to schedule with our customers or not.

"*Q.* I see. Is that a necessary function of your department?

"*A.* Very necessary."

We cannot, under such record, disturb the finding of the appeal board that the work appellant was performing was "a regularly recognized occupation and not made work." This wording, it would seem, may have been used in the finding by reason of the language of Mr. Justice FEAD in *Markey* v. *SS. Peter & Paul's Parish,* 281 Mich 292, at pages 299, 300:

"When an employee accepts work and receives wages therefor in a recognized regular employment, with the ordinary conditions of permanency, as here, there is no room for argument that he has not thereby established a present earning capacity equal to such wages, whatever may be his physical condition."

Thus, while appellant was so employed and his wages were equal to or greater than those received at the time of his injury, which is not disputed, he was not entitled to compensation benefits.

It is undisputed that he left his work of his own volition. His counsel argues with commendable vigor that to hold that he had to remain in such employment or forfeit his rights under the compensation act "creates nothing less than a form of serfdom or slavery." We would quickly agree, were the premise correct. We think, in the ardor of his advocacy, counsel overlooks an important point. It was not the fact of his voluntary leaving this employment that resulted in his loss of compensation benefits. To leave was his prerogative. He was not receiving any benefits at the time he left, nor under the act was he entitled to any. He had established a wage-earning capacity equal to or greater than the wages he was receiving at the time of his injury. When he filed an application for additional benefits, he became the moving party and his was the burden of proving that his inability to obtain

employment was the result of his injury and disability. Certainly, because he had established such capacity did not operate to foreclose him forever from further benefits. As we said in *MacDonald* v. *Great Lakes Steel Corporation,* 274 Mich 701, at p 703:

"The actual earning of wages establishes an earning capacity  *  *  *  that, prima facie, such earning capacity continues after the discharge of the employee from the employment in which the wages are earned and that the burden of showing a change of earning capacity when the employment ceases (in order to reinstate the original award or to decrease the setoff against it) is upon the employee. This is merely an application of the rule that the burden of proof of right to compensation  *  *  *  is on the employee. The prima facie assumption of continuance of earning capacity is in accord with ordinary human experience and not unfair.

"The ruling does not require the employee to show a change of physical condition after his discharge. *Nor does it prevent his showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances.*" (Emphasis supplied.)

The foregoing certainly applies, with at least equal force, to the case where the employee leaves the involved work voluntarily as it does to the case where the employee is discharged or the work ceases.

The question therefore becomes what proof did appellant introduce as to his actual earning capacity at the hearing before the referee? We agree at the outset with appellant's counsel that there is no testimony to support the conclusion of the appeal board that plaintiff would have been able to return to his punch press job despite his injury. The only testimony on the point available to us is to the con-

trary, namely, that the operation of a punch press requires two hands. Were this point controlling, we would perforce vacate the finding of the appeal board as having no testimonial support. However, the test is not whether appellant could again operate a punch press and earn the same wages he did at the time of his injury. To so hold would read out of the statute the unequivocal and clear language:[6]

"The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury."

What proof then did plaintiff-appellant submit of his "actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances." *MacDonald, supra.* Regrettably, there is little, if any, direct testimony on the point. Appellant testified that he lost his job in Tennessee because his employer "didn't have as much business as they thought they had when they hired me." The loss is in no way related testimonially to his disabling injury. It is conceded that after his return to Detroit he sought work from no one save his former employer. It is not disputed that he was not rehired by that employer for any reason other than lack of work. When questioned as to the reason he didn't look for other work in Detroit, appellant stated:

"Well, I looked so much down in Tennessee, then I have no luck there, nobody never did have nothing for me to do down there, so I just figured I couldn't get nothing up here. I got tired of filling out applications and looking for work."

---

6 CL 1948, § 412.11 (Stat Ann 1960 Rev § 17.161).

Upon questioning by the hearing referee, appellant testified that, in Tennessee, he "was looking for anything, it didn't matter what, just so I got a job." He further testified he so stated to employment agencies through which he sought work. Giving this testimony its most generous interpretation in behalf of one admittedly cruelly crippled in an industrial accident, the best that might be said for it is that it could support an inference by the finder of the facts that the fruitless quest for work was the result of the disability. Such was not the interpretation placed thereon by the appeal board. Contrariwise, the board preempts such an inference of fact by making the following specific finding:

"Plaintiff has offered no proof whatever of having been rejected for work by any prospective employer because of work limitation attributable to his injury."

This, coupled with the fact that the appellant established a post-injury wage-earning capacity, in a regularly recognized occupation and not in made work, in excess of his average weekly wage at the time of injury, seals off our area of review.

Appellant's case fails for want or proof of having been rejected for work by any prospective employer because of work limitation attributable to his injury.

Affirmed. Costs to the appellee.

T. M. KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and ADAMS, JJ., concurred.