BAUER v ALLIED SUPERMARKETS, INC

Docket No. 71543. Submitted August 31, 1984, at Detroit.—Decided
      December 4, 1984.

   Plaintiff, Robert W. Bauer, injured his back while employed by
      defendant Allied Supermarkets, Inc. Allied paid him workers'
      compensation benefits while he was off work recovering. Even-
      tually, plaintiff was dismissed by Allied because his injury
      made him unable to perform his job satisfactorily. Plaintiff filed
      a claim for benefits, alleging a specific injury date of March 12,
      1977, the date of his back injury, and an occupational disease
      disablement commencing January 12, 1978, which was his last
      day of work for Allied. After filing his claim, plaintiff secured
      employment with another employer and continued in that
      employment until November 14, 1979, when he was again
      injured. He received total benefits from the second employer as
      a result of the latter injury. The Workers' Compensation Ap-
      peal Board found that plaintiff suffered a compensable injury
      on March 12, 1977, and ordered Allied to pay benefits. The
      WCAB rejected the January 12, 1978, disablement date. The
      WCAB also found that plaintiff was entitled to full compensa-
      tion without regard to benefits he received from any other
      source, including his second employer. The WCAB did, how-
      ever, imply that plaintiff had established a new wage-earning
      capacity after his 1977 injury. Allied and its insurer, Travelers
      Insurance Company, appealed by leave granted, alleging that
      the WCAB erred in awarding a total benefit to plaintiff while
      he was receiving concurrent benefits from his second employer
      and in failing to grant the defendants an offset against those
      benefits. Defendants also alleged that plaintiff is not entitled to
      two awards because he did not have two concurrent wage-
      earning capacities at the time of his injuries or, alternatively,
      that the evidence was insufficient to find that he had estab-

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 616, 631.
[2, 3] 81 Am Jur 2d, Workmen's Compensation §§ 223, 229.
[2-6] 82 Am Jur 2d, Workmen's Compensation § 347 et seq.
[5] 82 Am Jur 2d, Workmen's Compensation § 517.
[6] 82 Am Jur 2d, Workmen's Compensation § 384.

lished a new wage-earning capacity at his second employment. *Held:*

1. The WCAB's finding that plaintiff suffered a specific injury on March 12, 1977, that left him permanently partially disabled in the field of unskilled labor was supported by competent evidence on the record.

2. It is not clear that the WCAB conclusively found that plaintiff established a new wage-earning capacity after the 1977 injury. A remand for clarification on this issue is necessary. If a post-injury wage-earning capacity is found, plaintiff will not be entitled to benefits for those periods during which he received wages equal to or greater than his pre-injury wages.

Remanded with instructions.

1. WORKERS' COMPENSATION — APPEAL — FINDINGS OF FACT.

Findings of fact by the Workers' Compensation Appeal Board are conclusive and may not be altered on appeal if there is any competent evidence in the record to support the findings (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

2. WORKERS' COMPENSATION — EARNING CAPACITY.

The objective of the Worker's Disability Compensation Act is to compensate employees for the loss of earning capacity that results from a work-related injury; compensation is not awarded for particular physical injuries as such, but for disability produced by such injury.

3. WORKERS' COMPENSATION — EARNING CAPACITY.

Determination of whether a workers' compensation claimant has not only a work-related injury but also a lost wage-earning capacity due to that injury requires consideration of such factors as the actual wage the claimant is able to earn following the injury, the nature of the work performed, the continuing availability of work of the kind in which the claimant was engaged at the time of the injury, and the nature and extent of the injury; furthermore, even where a disability is established, a claimant may be barred from receiving further compensation if he reestablishes a wage-earning capacity in regular employment.

4. WORKERS' COMPENSATION — EARNING CAPACITY.

A post-injury wage-earning capacity is established where a workers' compensation claimant accepts regular employment with ordinary conditions of permanency, and once such a capacity is established and the claimant is earning wages equal to or greater than the wages he was earning at the time of the injury he is not entitled to further compensation.

5. WORKERS' COMPENSATION — EARNING CAPACITY — BURDEN OF PROOF.

A workers' compensation claimant who has established a post-injury wage-earning capacity has the burden of showing that he or she is unable to obtain employment as a result of the injury where the post-injury wages cease and the claimant seeks further compensation for the disabling injury; the test for determining whether the claimant is entitled to further benefits is whether the injury affected the claimant's wage-earning capacity after the injury in the same or another employment (MCL 418.371; MSA 17.237[371]).

6. WORKERS' COMPENSATION — CONCURRENT DISABILITIES — EARNING CAPACITY.

A workers' compensation claimant may, under certain circumstances, receive two concurrent disability awards where he establishes that two distinct earning capacities have been destroyed by distinct disabilities.

*Charles Burke,* for plaintiff.

*Gofrank & Kelman* (by *Nancy E. Yost* and *Phillip G. Bozzo*), for defendants.

Before: HOOD, P.J., and R. B. BURNS and S. EVERETT,* JJ.

PER CURIAM. Defendants appeal by leave granted from the Workers' Compensation Appeal Board's (WCAB) decision to affirm with modifications a hearing referee's finding of disability and award of benefits.

Plaintiff began working for Allied Supermarkets in 1970 as a truck driver. He worked in that capacity until January, 1977, when Allied was forced to reduce its number of truckdrivers. Instead, Allied offered, and plaintiff accepted, work in its warehouse moving crates of grocery goods. On March 12, 1977, plaintiff injured his back while moving a heavy crate of melons. Plaintiff was off

* Circuit judge, sitting on the Court of Appeals by assignment.

work from March 13, 1977, until April 4, 1977, treating his back injury. During that period, Allied paid voluntary compensation benefits. When plaintiff returned to work, he did so in his former capacity as a truck driver. In October, 1977, another worker reduction caused plaintiff to return to warehouse work. Because plaintiff's back injury caused him to be unable to keep up with younger workers, Allied dismissed him on January 12, 1978. Plaintiff's average weekly wage computed at the time of his March, 1977, injury was $379.03. At the time of his discharge, plaintiff's average weekly wage was $400.

On April 19, 1978, plaintiff secured employment as a truck driver with the W. R. Grace Company. He was laid off by W. R. Grace twice, first from December 7, 1978, until April 30, 1979, and again for three weeks in the summer of 1979. On November 14, 1979, plaintiff was injured while working for W. R. Grace when he attempted to unhook a trailer from a tractor. That injury required surgery on plaintiff's right hip and leg for rehabilitation. W. R. Grace voluntarily paid plaintiff compensation benefits and was continuing to do so at the time of plaintiff's hearing.

Prior to beginning his employment with the W. R. Grace Company, plaintiff filed a petition for hearing with the Bureau of Workers' Disability Compensation. He alleged a specific injury date with Allied of March 12, 1977, at which time he injured his left hip and certain back muscles. One month later, again before plaintiff began working for W. R. Grace, he amended his petition to allege a disablement from an occupational disease as well as a specific injury disablement. He gave his last day of work, January 12, 1978, as the injury date for his occupational disease disablement. He alleged that frequent stooping, bending, and lifting

exacerbated his back injury. Neither Allied nor its insurance carriers on the risk ever joined W. R. Grace as a party in that action.

On the basis of evidence presented at an April 28, 1980, hearing and medical depositions submitted after the hearing, the referee rendered a decision on June 18, 1980. The referee found that plaintiff did receive a personal injury arising out of the course of his employment with Allied on January 12, 1978, and that plaintiff was engaged in unskilled labor at that time with an average weekly wage of $400. The referee ordered Allied and its insurer on the risk at that time, National Union Insurance Company, to pay plaintiff $153 weekly from January 12, 1978, to April 19, 1978, inclusive, and $153 per week from December 7, 1978, to April 30, 1979, inclusive for total disability, and for three weeks in the summer of 1979. The referee also ordered Allied and National to pay plaintiff $153 weekly for a partial disability from November 14, 1979, to the date of hearing and thereafter until further order of the bureau.

The referee further ordered that:

"Employee is still totally disabled from occupational disease date of January 12, 1978 to present time. Defendants Allied Supermarkets, Inc. & National Union Ins. to be given credit for compensation now being paid to employee for broken hip and leg injury suffered November 14, 1979, while employed at another separate distinct employer, to wit: W. R. Grace. Proportion based on formula of *Thumser v Lakey Foundry,* 84 Mich App 319, [269 NW2d 583 (1978), *rev'd in part* 406 Mich 891 (1979)]."

Allied and National Union filed a timely application for a review of plaintiff's claim with the WCAB. Soon thereafter they also filed a motion to be excused from Allied's obligation to pay 70% of

the awarded benefits pending the appeal to the WCAB, MCL 418.862; MSA 17.237(862). Allied argued that plaintiff was already receiving voluntary compensation from W. R. Grace and so would not suffer without the 70% payments. The WCAB granted the motion in a September 30, 1980, order.

On March 30, 1983, the WCAB issued a split decision which affirmed the award of benefits to plaintiff but which modified the referee's decision. The WCAB ordered Allied to pay compensation in accordance with § 361 of the Worker's Disability Compensation Act (WDCA), MCL 418.361; MSA 17.237(361), at a weekly rate of $132, from March 13, 1977, to April 28, 1980, inclusive, and thereafter until further order of the bureau. Allied received credit for compensation it had already paid plaintiff. The WCAB also ordered that the referee's finding of a January 12, 1978, injury date and the further order quoted above be deleted.

The WCAB controlling panel submitted a 12-page opinion with its order. In that opinion the WCAB found that bending, lifting, and reaching in Allied's warehouse did not do any further lasting damage to plaintiff's back. Therefore, the WCAB found only a specific date injury, not an occupational disease. Medical testimony showed that by September, 1979, plaintiff suffered only one residual effect of his 1977 injury, lower back pain. A medical doctor also testified that, although he did not consider plaintiff disabled because he could work, he would advise plaintiff not to do warehouse work if he could avoid it. The WCAB found this evidence to be sufficient for a finding of disability within the meaning of the WDCA.

The WCAB dismissed Allied's argument that any disability plaintiff suffered was attributable to the injury he sustained while working for W. R. Grace. The WCAB found that W. R. Grace was not

a party to the claim and that the WCAB did not have the authority to determine W. R. Grace's obligation to plaintiff. The WCAB found plaintiff to be entitled to full compensation by defendants without regard to benefits from any other source, including W. R. Grace. Furthermore, the WCAB found that "[p]laintiff has shown a clear trail of work-related partial disability from March 12, 1977, to date of hearing, independent of disability resulting from his November 14, 1979, injury". The WCAB then implied that plaintiff had established a new wage-earning capacity after his 1977 injury. The WCAB also repudiated the apportionment formula found in *Thumser, supra,* relied upon by the referee, because *Thumser* was subsequently reversed by the Supreme Court.

In their application for leave to appeal, defendants' arguments were (1) that the WCAB erred by awarding a total benefit to plaintiff for his disability while he was receiving concurrent total benefits from the W. R. Grace Company, and (2) that the WCAB erred in failing to grant defendants an offset against the voluntary benefits W. R. Grace was paying plaintiff. In their brief on appeal, defendants argue that plaintiff is not entitled to compensation for two total disabilities because he did not have two concurrent wage-earning capacities at the time of his injuries, *Hairston v Firestone Tire & Rubber Co,* 404 Mich 104; 273 NW2d 400 (1978), or, alternatively, that the evidence was not sufficient for the WCAB to find that plaintiff had established a new wage-earning capacity at W. R. Grace.

Plaintiff argues in reply that the WCAB correctly found compensation due by defendants to plaintiff without regard to the compensation being paid to plaintiff by W. R. Grace. Plaintiff relies on *Hairston, supra,* as did the WCAB. Plaintiff also

raises the argument in his appellate brief that the WCAB did not have the authority to suspend defendants' obligation to pay 70% of his benefits pending appeal. Plaintiff did not cross-appeal on this issue.

The WCAB's findings of fact are conclusive on appeal and may not be altered if there is any competent evidence in the record to support the findings. Const 1963, art 6, § 28, MCL 418.861; MSA 17.237(861). There is competent evidence on this record to support the WCAB's finding that plaintiff suffered a specific injury on March 12, 1977, that left him permanently partially disabled in the field of common unskilled labor.

We cannot conclude, as the parties do, that the WCAB conclusively found that plaintiff established a new wage-earning capacity after the 1977 injury. Thus, we must remand to the WCAB for clarification on this point. Moreover, we are convinced that the WCAB failed to do an adequate job of analyzing plaintiff's right to compensation from defendants even if the WCAB does find that plaintiff established a new post-injury wage-earning capacity. Therefore, we find it necessary to address the law on this point.

The objective of the WDCA is to compensate employees for the loss of earning capacity that is the result of a work-related injury. MCL 418.371(1); MSA 17.237(371)(1), *Lahay v Hastings Lodge No 1965 BPOE,* 398 Mich 467, 479; 247 NW2d 817 (1976). Compensation awards cannot be made for particular physical injuries as such, but for disability produced by such injury. *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 251-252; 262 NW2d 629 (1978), citing 2 Larson, Workmen's Compensation Law, § 57.10.

The test for determining whether a claimant has not only a work-related injury but also a lost

wage-earning capacity due to that injury is multi-faceted. A major factor to consider, of course, is the actual wage the claimant is able to earn post-injury. Other factors include the nature of the work performed, the continuing availability of work of the kind in which the claimant was engaged at the time of the injury, and the nature and extent of the injury. *Benavides v Edward C Levy Co,* 117 Mich App 722, 727; 324 NW2d 149 (1982). Furthermore, even if a disability is established, a claimant may be barred from receiving further compensation if the claimant reestablishes a wage-earning capacity in regular employment. *Powell v Casco Nelmor Corp,* 406 Mich 332, 352; 279 NW2d 769 (1979); *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966). A post-injury wage-earning capacity is established when a claimant accepts regular employment with ordinary conditions of permanency. *Powell, supra; MacDonald v Great Lakes Steel Corp,* 274 Mich 701; 265 NW 776 (1936). Once a post-injury wage-earning capacity is established and the claimant is earning wages equal to or greater than the wages he or she was earning at the time of the injury, the claimant is not entitled to further compensation, *Pulley, supra,* and the WCAB can presume that the reestablished or new wage-earning capacity continues. *Powell, supra,* pp 349, 351; *Pulley, supra.* In the event the post-injury wages should cease and the claimant seeks compensation for the disabling injury, the claimant then has the burden of showing that he or she is unable to obtain employment as a result of that injury. The claimant is not foreclosed from further benefits. However, the test is not whether the claimant could again work in precisely the same work he or she engaged in at the time of the injury. Rather, the test is whether the injury

affected the claimant's *"wage-earning capacity after the injury in the same or another employment"*. MCL 418.371; MSA 17.237(371) (emphasis added). See *Pulley, supra.*

Thus, in this case the WCAB must determine if plaintiff established, or reestablished, a wage-earning capacity after his March 12, 1977, injury. If so, the WCAB must determine when. If plaintiff did establish or reestablish a post-injury wage-earning capacity, he is not entitled to benefits for those periods during which he received wages equal to or greater than his pre-injury wages. Moreover, if plaintiff did reestablish a post-injury wage-earning capacity and later lost that capacity, plaintiff had the burden of showing that the loss of that wage-earning capacity was attributable to his 1977 injury. Thus, if the WCAB determines that plaintiff reestablished a wage-earning capacity at the same or greater wages and plaintiff cannot show that it was his 1977 injury that caused his subsequent loss of wage-earning capacity, he is not entitled to compensation from defendants.

We agree with plaintiff that it is possible for a claimant to receive two concurrent disability awards where the claimant establishes that two distinct earning capacities have been destroyed by distinct disabilities, *Hairston, supra, Thumser, supra; Hughes v Lakey Foundry Corp,* 91 Mich App 170; 284 NW2d 135 (1979). However, we find it necessary to address the limits of that rule. In *Thumser* and *Hughes, supra,* the claimants were first disabled in their wage-earning capacities as skilled workers. They reestablished wage-earning capacities as unskilled workers at reduced wages. They each suffered separate and distinct disabilities with regard to their newly established wage-earning capacities. In both cases, claimants rightly received compensation for both disabilities. How-

ever, their compensation for their first disability was based upon the difference between their initial higher wages and later lower wages. This was added to the compensation due them based on their second disability in the lower wage-earning capacity. The same result is unlikely to occur in this case since plaintiff made higher post-injury wages both at Allied and at W. R. Grace.

Furthermore, this is not a case where the claimant suffers injuries in two *concurrent* jobs with different wage-earning capacities. See *Hairston, supra,* and *Leizerman v First Flight Freight Service,* 135 Mich App 385; 354 NW2d 351 (1984). Rather, the employment taken by plaintiff after his 1977 injury appears to be substitute work for the work performed by plaintiff prior to his injury. Compare *Hughes, supra,* and *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956). See also *Leizerman, supra,* p 389. Thus, plaintiff's and the WCAB's reliance on *Hairston* is misplaced. That case is factually distinguishable.

Because we decide to remand this case for clarification of facts and for the application of the proper legal analysis of wage-earning capacity to the facts, and because the WCAB must then reconsider plaintiff's entitlement to compensation for his 1977 disablement, we do not address the other issues raised in this appeal.

It is therefore ordered that this case be remanded to the WCAB for reconsideration of defendants' application for review of the claim within 60 days. We retain jurisdiction.