WADE v GENERAL MOTORS CORPORATION

Docket No. 127023. Submitted June 16, 1992, at Lansing. Decided April 6, 1993, at 9:30 A.M. Leave to appeal sought.

Myron A. Wade sustained a wrist injury while working as a press operator for General Motors Corporation, was assigned to light-duty work as a cart operator, was permanently laid off from General Motors, and later resumed employment as a pharmacy technician for another employer. He sought workers' compensation partial-disability benefits for the wrist injury. A magistrate in the Bureau of Workers' Disability Compensation, whose decision was subsequently affirmed by the Workers' Compensation Appellate Commission, found the plaintiff disabled from the date of the wrist injury, concluded that his employment as a cart operator or a pharmacy technician did not establish a new wage-earning capacity, and awarded differential benefits based on the difference between the plaintiff's wages as a press operator and his wages as a pharmacy technician. The defendant appealed by leave granted.

The Court of Appeals *held:*

1. The plaintiff's employment as a cart operator did not establish a new wage-earning capacity, MCL 418.301(5)(d)(i); MSA 17.237(301)(5)(d)(i), because it was not "recognized regular employment." Therefore, he was entitled during the layoff period to wage-loss benefits based on his wages as a press operator.

2. The plaintiff is not disqualified from wage-loss benefits under § 301(5)(a) inasmuch as he did not refuse a bona fide offer of reasonable employment after his layoff.

3. Pursuant to § 301(5)(b), the plaintiff is entitled to differential benefits for the period of employment as a pharmacy technician.

Affirmed in part and reversed in part.

*Joel L. Alpert,* for the plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Bruce L. Dalrymple* and *Scott C. Strattard*), for the defendant.

Before: Sullivan, P.J., and MacKenzie and I. B. Torres,* JJ.

Per Curiam. Defendant appeals by leave granted from an opinion and order of the Workers' Compensation Appellate Commission, which affirmed the decision of a magistrate and awarded plaintiff continuing benefits for partial disability attributable to a 1984 wrist injury. We affirm in part and reverse in part.

Plaintiff injured his left wrist in June 1984 while employed as a press operator. Following his injury, plaintiff was assigned to light-duty work that he could do one-handed. Plaintiff later attempted to return to the press job, but the work proved to be too painful.

Plaintiff ultimately sought and received a transfer to a job as tow-motor operator. This job involved driving a cart to haul racks of parts around the plant. While the driving could be done one-handed, hooking the carts to the racks sometimes could not be, and plaintiff frequently received help from fellow employees in handling the racks.

Plaintiff was laid off from the tow-motor job in November 1986 because of a reduction in force, and he has never returned to employment with defendant. Plaintiff did, however, become certified and employed as a pharmacy technician. At the time of the magistrate's decision, plaintiff had been employed in that capacity for less than one hundred weeks.

The magistrate found that plaintiff was disabled from the date of his injury through the date of trial. He further found that the tow-motor job, although technically a regular job classification, constituted "favored work" with respect to plain-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

tiff because he had modified the job duties to make it a light-duty position. He also found that plaintiff's job as a pharmacy technician constituted "favored work." Finally, the magistrate concluded that plaintiff did not establish a new wage-earning capacity as a pharmacy technician and that he was therefore entitled to differential benefits of eighty percent of the difference between his wages as a pharmacy technician and his previous wages as a press operator pursuant to MCL 418.301(5)(b); MSA 17.237(301)(5)(6) and MCL 418.361(1); MSA 17.237(361)(1).

The WCAC adopted the magistrate's decision as its own. In so doing, it rejected defendant's argument that because plaintiff's tow-motor job was terminated because of a layoff, and not because of his disability, the magistrate erred in finding no new wage-earning capacity. In this regard, the WCAC concluded that it was defendant's burden to offer plaintiff new employment, rather than plaintiff's burden to seek it, as a prerequisite to invoking the disqualification language of § 301(5)(a). Thus, the mere theoretical possibility that plaintiff could have returned to the tow-motor job thirty days after a layoff was deemed irrelevant, because defendant made no effort to inform plaintiff of the availability of that or any substitute employment.

On appeal, the sole issue raised by defendant is whether the magistrate and the WCAC committed clear legal error in determining that plaintiff did not establish a new wage-earning capacity. Defendant appears to argue that the magistrate and the WCAC wrongly believed that they were precluded from finding a new wage-earning capacity once it was determined that plaintiff was disabled. We do not interpret the magistrate's opinion, nor that of the WCAC, as defendant suggests. A fair reading of both opinions reveals that separate determinations

were made regarding plaintiff's wage-earning capacity and disability. This was proper. See Welch, Workers' Compensation in Michigan: Law & Practice, §§ 10.11—10.17.

Nevertheless, we believe that the magistrate, and thus the WCAC, committed clear legal error in concluding that plaintiff's job as a pharmacy technician did not establish a new wage-earning capacity. Under the prestatutory, judicially developed doctrine of "favored work," a new wage-earning capacity could be established if the worker was employed in "a recognized regular employment, with the ordinary conditions of permanency." *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 424-425; 145 NW2d 40 (1966); quoting *Markey v S S Peter & Paul's Parish,* 281 Mich 292, 299-300; 274 NW 797 (1937). Under this definition, we would agree with the magistrate that, as performed by plaintiff, his job as tow-motor operator constituted favored work, with no new wage-earning capacity, because the job as modified by plaintiff was not "recognized regular employment." Plaintiff's job as a pharmacy technician was, however, "recognized regular employment" with the ordinary conditions of permanency, albeit at less pay than plaintiff had been earning while working for defendant. Under the favored-work doctrine, then, plaintiff would have established a new wage-earning capacity with his employment as a pharmacy technician. *Pulley, supra.*

Amendments of MCL 418.301; MSA 17.237(301) have replaced the favored-work doctrine with a new concept of "reasonable employment," as well as with a statutory definition of the type of benefits to be awarded. At the time of plaintiff's injury, § 301 provided in relevant part:

(4) As used in this chapter, "disability" means a

limitation of an employee's wage earning capacity in the employee's general field of employment resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.

(5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:

(a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

(b) If an employee is employed and the average weekly wage of the employee is less than that which the employee received before the date of injury, the employee shall receive weekly benefits under this act equal to 80% of the difference between the injured employee's after-tax weekly wage before the date of injury and the after-tax weekly wage which the injured employee is able to earn after the date of injury, but not more than the maximum weekly rate of compensation, as determined under section 355.

\* \* \*

(d) If the employee, after having been employed pursuant to this subsection for 100 weeks or more loses his or her job through no fault of the employee, the employee shall receive compensation under this act pursuant to the following:

(i) If after exhaustion of unemployment benefit eligibility of an employee, a worker's compensation magistrate or hearing referee determines for any employee covered under subdivision (d), that the employments since the time of injury have not established a new wage earning capacity, the em-

ployee shall receive compensation based upon his or her wage at the original date of injury. There is a presumption of wage earning capacity established for employments totalling 250 weeks or more.

(ii) The employee must still be disabled as determined pursuant to subsection (4). If the employee is still disabled, he or she shall be entitled to wage loss benefits based on the difference between the normal and customary wages paid to those persons performing the same or similar employment, as determined at the time of termination of the employment of the employee, and the wages paid at the time of the injury.

(iii) If the employee becomes reemployed and the employee is still disabled, he or she shall then receive wage loss benefits as provided in subdivision (b).

\* \* \*

(9) "Reasonable employment", as used in this section, means work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence. The employee's capacity to perform shall not be limited to jobs in his or her general field of employment.

Applying this scheme, we find no clear error in the WCAC's conclusion that plaintiff's performance of the tow-motor job, modified to accommodate his disability, was not "regular employment" and did not establish a new wage-earning capacity. Moreover, because plaintiff was employed as a tow-motor operator less than 250 weeks, there was no presumption that he had established a wage-earning capacity. Section 301(5)(d)(i). Furthermore, the magistrate and the WCAC were correct in rejecting application of § 301(5)(a) to disqualify plaintiff from benefits, because plaintiff never "received" a bona fide offer of reasonable employment after he

was laid off. Under these circumstances, § 301(5)(d)
(i) applies, and during the layoff period, plaintiff is
entitled to compensation based upon his "wage at
the original date of injury."

However, we find clear error in the WCAC's
treatment of plaintiff's employment as a pharmacy
technician. Plaintiff's job as a pharmacy technician
falls within the statutory definition of "reasonable
employment" set forth at § 301(9). Pursuant to
§ 301(5)(b), a disabled, employed worker such as
plaintiff is entitled to differential benefits equal to
eighty percent of the difference between after-tax
weekly wages before the injury and after-tax
wages established in a new wage-earning capacity
after the injury.

Affirmed in part and reversed in part.