## POWELL v CASCO NELMOR CORPORATION

Docket No. 60422. Argued November 15, 1978 (Calendar No. 7).—
Decided June 18, 1979.

Lydia Powell injured her left hand while operating a buffing
machine in March, 1967. She received workers' compensation
benefits from her employer, Casco Nelmor Corporation, and its
insurer, Bituminous Fire and Marine Insurance Company. The
plaintiff returned to "favored work" and worked from 1968
until 1972 except for approximately four months during which
she received further benefits related to surgery on her left
hand. She has also undergone surgery for cancer of the larynx
so that she now breathes through an opening in her throat.
The plaintiff's claim for workers' compensation benefits for the
cancer was redeemed in 1973 for $7,500. Before that, she had
amended her claim to allege that an occupational injury to her
right hand was caused by pressing harder with it while doing
grinding work in order to compensate for the weakness in her
injured left hand. The Workmen's Compensation Appeal Board
found that the plaintiff was partially disabled but was not
entitled to benefits for her injured right hand because her
return to "favored work" in 1968 resulted in no loss of wages to
her. The Court of Appeals, V. J. Brennan, P.J., and D. F. Walsh
and J. N. O'Brien, JJ., affirmed in an unpublished per curiam
opinion (Docket No. 29043). Plaintiff appeals. *Held:*

1. Redemption of one claim for workers' compensation bene-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] [No Reference]
[2, 16] 82 Am Jur 2d, Workmen's Compensation § 333.
[3] 82 Am Jur 2d, Workmen's Compensation § 366.
[4] 82 Am Jur 2d, Workmen's Compensation §§ 348, 378.
[5] 82 Am Jur 2d, Workmen's Compensation §§ 338-348.
[6, 7] 82 Am Jur 2d, Workmen's Compensation §§ 511-518, 534.
[8] 82 Am Jur 2d, Workmen's Compensation § 333 *et seq.*
[9, 10] 82 Am Jur 2d, Workmen's Compensation §§ 347 *et seq.,* 373,
378.
[11, 12] 82 Am Jur 2d, Workmen's Compensation §§ 347, 348, 373.
[13] 82 Am Jur 2d, Workmen's Compensation §§ 348, 373.
[14] 82 Am Jur 2d, Workmen's Compensation § 348.
[15] 82 Am Jur 2d, Workmen's Compensation § 373.

fits does not generally operate to redeem separate claims even though the separate claims existed before the date of the redemption. The language of the redemption agreement specified that the plaintiff's cancer was not conceded by the employer to relate to her employment. Under the Worker's Disability Compensation Act a redemption does not constitute an admission of liability for a disability. Furthermore, all but $1,100 of the $7,500 redemption award was designated for hospital, medical, surgical and legal services in connection with the cancer. Therefore, redemption of the cancer claim cannot preclude recovery for the prior injury to the plaintiff's right hand.

2. Performance of any work after an injury with no loss of wages precludes payment of workers' compensation benefits while that work continues because, under the statute, the employer is permitted to set off against the payable benefits the employee's wages or wage-earning capacity after the injury. However, in this case the Workmen's Compensation Appeal Board found that the plaintiff's employment after her hand injury was "favored work", which does not establish her continuing wage-earning capacity. It is irrelevant that the job which she performed was not "manufactured" for her particular incapacity as long as she could not perform work according to her skills before the injury.

3. The finding of the Workmen's Compensation Appeal Board that the plaintiff was "disabled" unequivocally established that she had met her burden of proof on that issue. She was unable to perform the work she was doing before her hand was injured. The burden of proof as to an injured employee's right to compensation is fundamentally satisfied by the same proofs as those offered to establish disability. The Workmen's Compensation Appeal Board found that the plaintiff was capable of performing only "favored work", which conclusively established that she had met her burden of proof as to her entitlement to workers' compensation. No post-injury wage-earning capacity in her regular employment was established; therefore it cannot be presumed that the plaintiff had a continuing wage-earning capacity. The burden was on the defendants to prove that the plaintiff had a wage-earning capacity.

4. Inability to continue "favored work", where that inability arises from a supervening event for which the worker is not responsible, does not bar entitlement to workers' compensation. The plaintiff has established her entitlement to workers' compensation for the injury to her right hand. The entitlement is not barred by her subsequent wages for "favored work" nor her

later inability to continue that work because of her sensitivity to dust and fumes after her cancer operation. Further, the redemption of her claim for the cancer which was not found by the Workmen's Compensation Appeal Board to be work-related does not duplicate workers' compensation for the hand injury which was found to be work-related. The plaintiff's disabling cancer had no effect on her right to workers' compensation for the prior injury to her hand.

Reversed.

Chief Justice Coleman, joined by Justices Fitzgerald and Ryan, dissented in part. She concurred in the holding that the redemption of the plaintiff's claim for benefits deriving from her cancer of the larynx does not preclude recovery on her claim for pre-cancer occupational injuries on the ground that there is no factual or legal basis upon which the redemption agreement, entered into without any determination of liability, could be said to preclude benefits for the pre-existing hand injuries. The plaintiff's entitlement to benefits should be evaluated in light of her wage-earning capacity before her cancer, which was an independent, intervening event. However, Justice Coleman dissented as to the use of the "favored work" concept as a net to catch any and all work subsequent to an injury performed for the same employer.

1. The Workmen's Compensation Appeal Board's assertion that the plaintiff's post-injuries employment was "favored" is not supported by any analysis which would show that the post-injury employment was not regular employment with ordinary conditions of permanency. It may mean that because the plaintiff could not perform her pre-injury employment the Workmen's Compensation Appeal Board found that her post-injury employment was necessarily favored work. Conversely, the Workmen's Compensation Appeal Board may have found that the post-injury employment was similar to odd-lot, nondescript or "manufactured" work. The meaning of their label "favored" is not apparent. Fitting post-injury employment into favored or nonfavored categories provides little assistance in the resolution of this type of situation.

2. The proper focus of analysis in this case has been dictated by the Legislature. The relevant inquiry is whether the employee's wage-earning capacity has been impaired and, if so, to what extent. The statute clearly says that a claimant may be disabled and still have an earning capacity "in the same or another employment". The Workmen's Compensation Appeal Board did not address itself to this crucial issue of fact. There-

fore this case should be remanded to the Workmen's Compensation Appeal Board for a determination whether the plaintiff's wage-earning capacity had been impaired and, if so, to what extent. Entitlement to benefits should be computed accordingly.

3. It is not true that, as a matter of law, post-injury employment in a different kind of work can never establish an earning capacity. The issue is the same whether post-injury work is labeled "favored" or "nonfavored": has claimant's wage-earning capacity been impaired and, if so, to what extent? If a claimant's general disability (as distinguished from a scheduled disability) still allows the claimant to perform a regularly recognized job with ordinary conditions of permanency, then that fact is relevant and material to ascertaining the degree of impairment of earning capacity. Similarly, even if post-injury employment is necessarily less strenuous because of the injury, the fact that claimant is able to work in some capacity should be considered by the finder of fact.

4. Any post-injury earnings should create a rebuttable presumption of current wage-earning capacity equal to the amount of the earnings. Such a presumption may be rebutted and overcome by other factors. Consideration also should be given to physical and mental abilities, education, training, age, availability of employment within these abilities, and whether any post-injury employment was a regular job with ordinary conditions of permanency or more similar to odd-lot, nondescript or "manufactured" work. The claimant should be allowed an opportunity to show that the post-injury employment is an unreliable basis for measuring wage-earning capacity or to establish incapacity through independent evidence.

5. Earning capacity has many component parts of which actual earnings are merely one. Yet it is reasonable to presume that if a claimant has actual earnings after a disabling injury, then an earning capacity exists commensurate with those wages. Post-injury earnings are the clearest evidence of a claimant's earning capacity, particularly when the post-injury work is in regularly recognized employment with ordinary conditions of permanency. The existence of post-injury employment cannot be solely determinative of the earning-capacity issue or the unscrupulous employer could unfairly avoid paying benefits. But the practice of characterizing such employment as favored or nonfavored and then saying that as a matter of law no wage-earning capacity can ever be established in favored work undermines the function of the statutory set-off proviso. No workable definition of "favored" work has been presented. A far better approach is to avoid useless labels and to confront

the task of ascertaining the extent of impairment of the claimant's earning capacity.

Opinion of the Court

1. Workmen's Compensation — Redemption — Separate Claims.

Redemption of one claim for workers' compensation does not generally operate to redeem separate claims even though the separate claims existed before the date of the redemption.

2. Workmen's Compensation — Redemption — Liability.

Redemption of a claim for workers' compensation does not, under the statute, constitute an admission of liability for the disability; therefore a redemption cannot duplicate workers' compensation benefits for a prior work-related disability (MCL 418.835; MSA 17.237[835]).

3. Workmen's Compensation — Benefits — Set Off — Wage-Earning Capacity.

Performance of work with no loss of wages after an injury precludes payment of workers' compensation benefits while that work continues under the set-off provision of the Worker's Disability Compensation Act (MCL 418.371; MSA 17.237[371]).

4. Workmen's Compensation — Benefits — Set Off — Wage-Earning Capacity — Favored Work.

Performance of "favored work" after a work-related injury does not establish a wage-earning capacity for the purpose of computing future workers' compensation benefits (MCL 418.371; MSA 17.237[371]).

5. Workmen's Compensation — Benefits — Set Off — Favored Work.

It is irrelevant to the question whether a worker was performing "favored work" that the job performed by the worker after an injury was not "manufactured" for the worker's particular incapacity as long as the worker could not perform work performed before the injury.

6. Workmen's Compensation — Burden of Proof — Disability.

The burden of proof as to an injured employee's right to workers' compensation is fundamentally satisfied by the same proofs as those offered to establish disability.

7. Workmen's Compensation — Burden of Proof — Findings of Fact — Disability — Favored Work.

A finding by the Workmen's Compensation Appeal Board that a claimant was capable of performing only "favored work" after

a work-related injury conclusively established that the claimant had met her burden of proof as to her entitlement to workers' compensation; it cannot be presumed that the claimant had a continuing wage-earning capacity because no post-injury wage-earning capacity is established by performance of "favored work".

8. WORKMEN'S COMPENSATION — BENEFITS — FAVORED WORK — SUPERVENING EVENTS.

A worker's inability to continue "favored work" after a work-related injury does not bar entitlement to workers' compensation benefits where that inability arises from a supervening event for which the worker is not responsible.

DISSENTING OPINION BY COLEMAN, C.J.

9. WORKMEN'S COMPENSATION — BENEFITS — WAGE-EARNING CAPACITY.

The relevant inquiry to determine the amount of workmen's compensation benefits to which a disabled worker is entitled is whether the worker's wage-earning capacity has been impaired and, if so, to what extent (MCL 418.371; MSA 17.237[371]).

10. WORKMEN'S COMPENSATION — BENEFITS — WAGE-EARNING CAPACITY.

The Worker's Disability Compensation Act clearly says that a claimant may be disabled and still have an earning capacity in the same or another employment which is considered in computing his entitlement to benefits (MCL 418.371; MSA 17.237[371]).

11. WORKMEN'S COMPENSATION — BENEFITS — WAGE-EARNING CAPACITY.

Wage-earning capacity has many component parts, which include actual wages as one; consideration should also be given to the worker's physical and mental abilities, education, training and age, the availability of employment within these abilities, and whether any post-injury employment was a regular job with ordinary conditions of permanency or was more similar to odd-lot, nondescript or "manufactured" work (MCL 418.371; MSA 17.237[371]).

12. WORKMEN'S COMPENSATION — BENEFITS — WAGE-EARNING CAPACITY.

Any post-injury earnings by a disabled worker should create a rebuttable presumption of current wage-earning capacity equal

to the amount of the earnings; however, the workmen's compensation claimant should be allowed an opportunity to show that the post-injury employment is an unreliable basis for measuring wage-earning capacity or to establish incapacity through independent evidence (MCL 418.371; MSA 17.237[371]).

13. WORKMEN'S COMPENSATION — BENEFITS — WAGE-EARNING CAPACITY.

Post-injury earnings by a workmen's compensation claimant are the clearest evidence of the claimant's earning capacity, particularly when the post-injury work is in regularly recognized employment with ordinary conditions of permanency; if the employment was "manufactured" work, temporary, sporadic, or of the "odd-lot" variety then the force of the presumption that the claimant has a wage-earning capacity is diluted (MCL 418.371; MSA 17.237[371]).

14. WORKMEN'S COMPENSATION — BENEFITS — WAGE-EARNING CAPACITY — FAVORED WORK.

The practice of characterizing post-injury employment of a worker claiming workmen's compensation benefits as "favored" or "nonfavored" work and then saying that as a matter of law wage-earning capacity can never be established by favored work should be ended because it undermines the function of the set-off provision of the Worker's Disability Compensation Act (MCL 418.371; MSA 17.237[371]).

15. WORKMEN'S COMPENSATION — BENEFITS — WAGE-EARNING CAPACITY.

Whether performance of certain work after a worker is disabled establishes an earning capacity should depend upon consideration of all relevant factors including the nature, permanency and availability of such work evaluated in light of the claimant's disabilities (MCL 418.371; MSA 17.237[371]).

16. WORKMEN'S COMPENSATION — BENEFITS — SUPERVENING EVENT.

A plaintiff worker's entitlement to workmen's compensation benefits for a hand injury should be evaluated in light of her wage-earning capacity before her subsequent disability due to cancer, which was an independent, intervening event.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Robert F. Auld* and *Richard D. Toth*), for plaintiff.

*Salisbury, Ciampa & Franco* for defendants.

WILLIAMS, J. Leave to appeal was granted to determine whether a worker who suffered a work-related hand injury is entitled to compensation under the following circumstances: (1) the worker obtained a redemption for a subsequent cancer claim; (2) the worker after the hand injury but prior to the discovery of her cancer was given favored work at wages equal to or higher than her wages prior to the hand injury; and (3) an operation resulting from the cancer made the worker more sensitive to the pollutants in her place of work and hence unable to continue to work and earn wages at her previous favored work.

We hold as follows: (1) the redemption both in fact and legally was not related to a work injury. Hence, there is no duplication between it and the workers' compensation for the hand injury which was work-related. Consequently, the redemption does not affect the worker's right to compensation. (2) So long as a worker is receiving wages at favored work equal to or higher than his or her wages prior to injury, the worker is not entitled to compensation. The receipt of wages for favored work, however, does not establish a wage-earning capacity and hence does not modify the right to compensation for a prior injury when favored work is no longer available. (3) A supervening event, not chargeable to the worker, which makes it impossible for the worker to continue his or her previous favored work does not preclude the payment of compensation for a prior injury. We, therefore, hold that there is no legal basis on which to preclude payment of the plaintiff's compensation in this case.

The WCAB and the Court of Appeals are reversed.

## I. FACTS

Plaintiff Lydia Powell commenced work for de-

fendant, Casco Nelmor Corporation (hereinafter employer), in October, 1966. In March, 1967, plaintiff was operating an automatic loader buffing device when a piece of stock flew off and struck her at the base of her left thumb. Powell was unable to work for a two-month period while she received treatments for her injury; during this period plaintiff was paid workers' compensation benefits by defendant Bituminous Fire & Marine Insurance Company (hereinafter insurer).

Plaintiff was advised to have surgery but did not do so at that time and returned to work in June, 1967. Because of an inability to open her left hand after the injury, plaintiff could no longer mount parts as required in the buffing job, and she was therefore put to work on a burring wheel.

The deburring job required that plaintiff press the frame of a car mirror against a solid grinding wheel. This process caused pain in plaintiff's left wrist which required her to compensate by pressing harder with her right hand. As a consequence, by November, 1967, plaintiff was suffering from both pain and swelling in the area of her right thumb and was unable to continue work on the deburring wheel. Dr. Richard Hall, whose office had treated plaintiff since 1967, indicated in his deposition that plaintiff was suffering from De Quervain's disease in her left hand and "trigger" thumb in her right.

Plaintiff underwent surgery on her right hand and did not return to work for a period of three or four months during which time she was paid workers' compensation benefits by the insurer.

Plaintiff returned to work in March, 1968, and was assigned to a "bagging" job which necessitated minimal strain to her hands. The Workers' Compensation Appeal Board (hereinafter WCAB) found the "bagging" job to be favored work.

In September, 1968, plaintiff consulted another physician, Dr. Reid. At this time plaintiff consented to have the necessary surgery on her left hand. During this latter period of unemployment, the insurer paid medical expenses but plaintiff received no workers' compensation disability benefits.

Plaintiff returned to work in January, 1969. She first performed a typing job, but eventually returned to her bagging duties at which she continued until the termination of her employment.

During the period in which plaintiff performed favored work, her employer would periodically try her at the burring wheel. After a few hours, however, this activity caused plaintiff pain and could not be continued.

At no time during her performance of favored work did plaintiff suffer a decrease in hourly pay; in fact, she received periodic raises over that period.

Plaintiff continued in favored work until 1971 when she began to have throat trouble. The malady was diagnosed as cancer of the larynx and in August, 1971, plaintiff underwent a laryngectomy performed by Dr. Donald Bolstad. In December, 1971, plaintiff underwent a subsequent surgical procedure to correct a narrowing of her trachea and thereby facilitate breathing.

Plaintiff returned to favored work after her laryngectomy, but terminated her employment in April, 1972, and has not worked since that date. Plaintiff ceased work because of irritation to her throat occasioned by dust and fumes at defendant employer's plant. As explained during the deposition of Dr. Janette D. Sherman, the reason for the irritation was that plaintiff, who now breathes through an opening in her neck, no longer has the

filtering process of a normal person, thereby permitting the introduction of "a higher dose of pollutants directly into the tracheobronchial tree". Dr. Sherman noted that plaintiff's work environment exposed her to dust, metal particles, solvents, smoke, buffing compounds and products of combustion. Dr. Raymond J. Barrett, testifying on behalf of defendant insurer, did not think plaintiff was disabled from doing the packing job, but admitted she might be "uncomfortable in such an atmosphere" if she is coughing when around dust or smoke. Dr. Donald Bolstad, who performed plaintiff's surgery, recommended that plaintiff work only in areas free from such fumes.

In December, 1971, plaintiff filed a claim for workers' compensation asserting that the chemical fumes and dusty conditions at defendant's plant had caused plaintiff's throat cancer. The claim was resolved, with approval of the administrative law judge, by a redemption agreement entered into by plaintiff and two insurance companies which provided insurance for defendant employer subsequent to that provided by the instant defendant insurer. The agreement to redeem liability states in part:

"A dispute exists as to whether plaintiff suffers from any accidental personal injury or any occupational disease or disability attributable to her employment. Rather than litigate the issues, the outcome of which is uncertain, it is the desire of the parties to redeem any and all liability * * *."

The order of redemption is dated August 28, 1973.

Prior to redemption of the cancer claim, however, plaintiff had filed an amended petition alleging the work-related injury to her hand and thumb. This latter claim was heard before an

administrative law judge on April 16, 1974, and a decision was entered finding plaintiff to have sustained a total disability and ordering defendant to pay plaintiff $60 per week.

Defendant insurer appealed this award claiming that plaintiff's hand condition was an occupational disease thereby rendering liable the insurer as of plaintiff's last day of work rather than the instant defendant insurer.

The WCAB disagreed with defendant, finding that:

"plaintiff's present condition stems solely from the events of 1967—the March 16 incident involving her left wrist, and the occupational aggravation of her right thumb by causes and conditions of her employment through November 15, 1967. No later work contributed or aggravated in any way, we find.

"Plaintiff is thus partially disabled in the field of common labor, and any benefits due her are due from defendant-appellant, Bituminous Casualty."

The WCAB went on to find, however, that despite her disability, plaintiff was entitled to no benefits,

"While she remains partially disabled * * * an event intervened in no way imputable to the employer, and the law * * * directs that we award only those benefits to which plaintiff was entitled prior to the larynx cancer interrupted [sic] her work career—in this case, none."

Plaintiff appealed to the Court of Appeals which affirmed in an unpublished per curiam opinion dated September 13, 1977. That Court found that the WCAB had erred as a matter of law in concluding that plaintiff's cancer would itself alter her right to benefits, but nonetheless upheld the result of the WCAB.

Plaintiff filed application for leave to appeal to this Court and leave was granted March 9, 1978.[1]

## II. CANCER REDEMPTION DOES NOT OVERLAP HAND INJURY COMPENSATION

The first question on which this Court granted leave to appeal relates to whether there is an overlap on the cancer claim and compensation for the prior hand injury. That question reads: "(1) whether plaintiff's redemption of liability on her claim that she was disabled as a result of an occupational disease precludes her recovery on a claim of partial disability stemming from her 1967 injury". We find it does not.

Our conclusion is based upon both the facts surrounding this particular redemption agreement and certain legal principles applicable to all redemption agreements.

First, redemption of one claim does not generally operate to cancel rights on separate claims even though the separate claims existed prior to the date of the redemption. *Herrala v Jones & Laughlin Steel Corp,* 43 Mich App 154; 203 NW2d 752 (1972).

Second, under the language of the redemption agreement, the cancer was specifically not conceded to relate to "any accidental personal injury or any occupational disease or disability attributable to her employment".[2] Since the redemption

---

[1] Because of the 1967 injury date, the 1912 act, MCL 411.1 *et seq.;* MSA 17.141 *et seq.,* is the proper statutory authority in the instant case. That act was repealed and replaced by the 1969 act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.* Citation to the prior act will be made when statutory authority directly impacts the 1967 hand injury in the instant decision.

[2] The fact that the redemption precludes an imputation of work-relatedness is obliquely referred to in the WCAB decision as follows:

"While the claim was made that said [hand] condition was also

does not legally constitute an admission of liability for a work-related disability, MCL 418.835; MSA 17.237(835),[3] the redemption cannot factually or legally overlap or duplicate compensation for a prior work-related disability.[4] Furthermore, the practicalities of the matter are in accord with this finding; all but $1,100 of the $7,500 redemption award was specifically earmarked for hospital, medical, surgical or legal services in connection with the cancer.

On review of the record and the law, it is apparent that there exists no overlap or duplication of compensation and redemption. As a consequence, there is no reason why the redemption of the subsequent cancer claim should preclude recovery on the prior work-related hand injury.[5]

---

work-related, that claim has been rendered moot by the redemption above-noted."

[3] The parties entered into the redemption agreement in 1973, after the effective date of the new statute which therefore applies to that agreement.

[4] According to the findings of fact of the WCAB, the insurance companies who participated in the redemption agreement did not insure the defendant employer when plaintiff's hand injury occurred and were therefore not liable for any compensation due as a result of the hand injury.

[5] Even when an employee suffers two injuries and both are found to be work-related, a redemption of one does not preclude payment of benefits for the other as long as payment is not made for the same temporal period of disability. *Herrala v Jones & Laughlin Steel Corp*, 43 Mich App 154; 203 NW2d 752 (1972). See also *Harrison v Lakey Foundry Co*, 361 Mich 677; 106 NW2d 521 (1960).

Defendant in fact admits the correctness of this rule as it relates to the case at bar and states in its brief before this Court:

"Defendant-appellee is prepared to acknowledge that Lydia Powell's 1973 redemption of liability for occupational disease purposes does not, *in and of itself,* preclude recovery on her claim of partial disability from the 1967 injury so long as such partial disability is determined to be from a specific injury or single event." (Emphasis in original.) Defendant-Appellant's Brief, pp 3-4.

Defendant's only related assertion is that plaintiff's hand disability is an occupational disease for which benefits should be paid by the insurance company "on the risk on Lydia Powell's last day worked * * *". Defendant-Appellant's Brief, p 4.

As quoted above, the WCAB specifically found that plaintiff's hand

### III. Effect of Post-Hand-Injury Work History and Subsequent Disabling Cancer

As framed in our order granting leave to appeal, the second limited issue reads: "(2) given the Workmen's Compensation Appeal Board's finding of partial disability from her 1967 injury, what effect did plaintiff's post-injury work history and the subsequently disabling cancer have on her right to benefits". This second issue breaks down into two subquestions. The first subquestion is whether plaintiff's entitlement to workers' compensation is adversely impacted by the fact that, after her hand injury, plaintiff was given favored work and received wages equal to or greater than those received before the hand injury. The second subquestion is whether plaintiff's entitlement to workers' compensation is affected by the fact that, while employed at favored work, plaintiff contracted cancer, required an operation, and was no longer able to continue with her previous favored work.

### A. Post-Hand-Injury Employment and Wages

We first turn our attention to the subquestion of whether plaintiff's post-hand-injury work and the wages she received therefor adversely impact her present right to benefits. The WCAB answered this question against the plaintiff:

"*[P]laintiff* after becoming partially disabled, *worked at favored duty for well over three years* without incident until a supervening event occurred, *and at no*

---

disability stems solely from events in 1967 when defendant insurer and not another insurance company was "on the risk". Because there is evidence in the record to support this finding of fact, *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 250; 262 NW2d 629 (1978), we do not consider defendant's assertion further.

*wage loss* (she testified deburring and packing paid the same rate).

"In such situations, the Court of Appeals *(Dalton v Candler-Rusche, Inc,* 65 Mich [App] 282 [237 NW2d 290 (1975)]), has most recently directed that our consideration of *the wages plaintiff was able to earn post-injury and pre-supervening event is an appropriate measuring device in computing benefits* (if any) that are due. Accordingly, on plaintiff's own testimony, she was making no less (actually more) in 1972 than in 1967, and was at that later date entitled to no partial compensation payments." (Emphasis added.)

The Court of Appeals upheld the·WCAB concluding as follows:

"In the case at bar, the amount of plaintiff's post-injury, pre-cancer earnings, and her subsequent, intervening disability do not preclude plaintiff from ever receiving compensation for her hand injuries. Her *post-injury wages,* however, *do establish an earning capacity which presumably continues.* Plaintiff carries the burden of proving that, because of her hand injuries, her present earning ability is lower than her pre-injury, wage-earning capacity. As plaintiff offered no such proof, the board properly denied benefits." (Emphasis added.)

We cannot agree.

There is no dispute that the performance of post-injury work at no wage loss precludes payment of disability benefits while that work continues. This result is statutorily directed by MCL 412.11; MSA 17.161[6] which limits benefits as follows:

"The compensation payable, when added to his wage earning capacity after the injury in the same or an-

---

[6] MCL 412.11; MSA 17.161 is now MCL 418.371; MSA 17.237(371).

other employment, shall not exceed his average weekly
earnings at the time of such injury."

This provision was added to the workers' compensation act in 1927 to specifically preclude benefits in the event that an injured employee was
working at another job subsequent to the worker's
injury which paid comparable or higher wages.
*Lynch v Briggs Manufacturing Co,* 329 Mich 168,
171-172; 45 NW2d 20 (1950); see *Geis v Packard
Motor Car Co,* 214 Mich 646; 185 NW 916 (1921).
Under this provision, the employer is permitted to
deduct (or set off) from compensation payable the
employee's wages or wage-earning capacity after
the injury. *Lynch, supra,* p 172. However, a post-
injury wage-earning capacity is established only if
a claimant has accepted regular employment with
ordinary conditions of permanency. *Markey v SS
Peter & Paul's Parish,* 281 Mich 292, 299-300; 274
NW 797 (1937); *MacDonald v Great Lakes Steel
Corp,* 274 Mich 701; 265 NW 776 (1936).

Contrary to the employer's assertions, plaintiff
herein did not receive such regular employment.[7]
Rather, plaintiff's post-hand-injury employment
was factually determined by the WCAB to constitute "favored work", and favored work does not
establish a wage-earning capacity, *Evans v United
States Rubber Co,* 379 Mich 457, 465; 152 NW2d
641 (1967); *Lynch, supra,* p 172; *Tury v General
Motors Corp,* 80 Mich App 379, 385; 264 NW2d 2
(1978), *lv den* 402 Mich 908 (1978).[8]

---

[7] It is irrelevant that the bagging job performed by plaintiff after
her hand injury was not "manufactured" for her particular incapacity
but was one regularly performed by other employees as long as she
could not perform according to her prior skills. *Evans v United States
Rubber Co,* 379 Mich 457, 465; 152 NW2d 641 (1967).

[8] The rationale for looking to the nature of the post-injury employment rather than simply to the amount of post-injury earnings was
discussed in *Pulley v Detroit Engineering & Machine Co,* 378 Mich
418, 423; 145 NW2d 40 (1966):

This being the law, we find the Court of Appeals erred in two respects under the instant facts. First, while that Court correctly noted that "plaintiff's post-injury, pre-cancer earnings * * * do not preclude plaintiff from ever receiving compensation for her hand injuries", error is demonstrated in its subsequent and patently contradictory statement that plaintiff's "post-injury wages, however, do establish an earning capacity which presumably continues". Such a presumption would only arise from work which establishes an earning capacity. *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 426; 145 NW2d 40 (1966). It is inconsistent to conclude, on the one hand, that favored work does not establish a wage-earning capacity while holding, on the other, that wages earned in the course of favored work do establish a wage-earning capacity, *Evans, supra,* p 465. Such a finding neither comports with logic nor the rationale behind the rule, see footnote 8, *supra.*[9]

The second error we find in the Court of Appeals opinion is the gratuitous and incorrect statement that:

"Presumably and actually, an employee can be injured, disabled to a degree, and yet suffer no weekly wage loss because he is shown to be able to earn an amount equal to or greater than that which he was earning at the time of his injury. In many instances from the highest motives of desire to rehabilitate the employee and restore him as a wage-earning member of society, some employers have retained injured employees in new jobs within their capacity to perform. *It is not difficult to perceive,* however, *that an ill-intentioned employer desirous of avoiding compensation payments could rehire an injured and disabled employee, establish his capacity to earn as much or more than before his injury and terminate his employment.* Then, if the bare elements of proof of what the employee was paid were construed as establishing his 'earning capacity' the whole purpose of the act would be vitiated." (Emphasis added.)

[9] The authorities cited by the employer, *Pulley v Detroit Engineering & Machine Co, supra; MacDonald v Great Lakes Steel Corp,* 274 Mich 701; 265 NW 776 (1936); *Dalton v Candler-Rusche, Inc,* 65 Mich App 282; 237 NW2d 290 (1975), are inapposite. There was no specific finding of fact in any of those cases that the post-injury employment was "favored work".

"Her post-injury wages, however, do establish an earning capacity which presumably continues. Plaintiff carries the burden of proving that because of her hand injuries, her present ability is lower than her pre-injury, wage-earning capacity. As plaintiff offered no such proof, the board properly denied benefits."

This statement is replete with errors of law. In the first place it is based on the erroneous legal assumption that "[h]er post-injury wages * * * establish an earning capacity". As we have just discussed, insofar as plaintiff's post-injury wages were received for favored work, those wages legally could not "establish an earning capacity". Since there was no legal post-injury wage-earning capacity there could be no such assumption and, therefore, no continuation of the presumption.

Second, in the present context, it is legally and factually incorrect to conclude that "[p]laintiff carries the burden of proving that because of her hand injuries, her present ability is lower than her pre-injury, wage-earning capacity". The fact of the matter is that plaintiff had already met her burden of proof.

In Michigan "disability" is defined as the "inability to perform the work claimant was doing when injured". 2 Larson, Workmen's Compensation Law, § 57.53, p 10-129; see, *e.g., Allen v National Twist Drill & Tool Co,* 324 Mich 660, 663; 37 NW2d 664 (1949); *Parling v Motor Wheel Corp,* 324 Mich 420; 37 NW2d 159 (1949). The fact that the WCAB found plaintiff to be "disabled" unequivocally established that plaintiff had met her burden of proof as to being disabled; she was unable to perform her pre-hand-injury work.

Third, the statement "[a]s plaintiff offered no such proof [of wage-earning capacity], the board properly denied benefits" is erroneous for several

reasons. As indicated, plaintiff had properly offered proofs establishing that she was disabled. The burden of proof as to an injured employee's right to compensation in this jurisdiction is fundamentally satisfied by the same proofs offered to establish disability.

" 'The test of an injured employee's right to compensation is his *inability* by reason of the accident *to work and earn wages in the employment at which he was engaged when injured.'* Levanen v Seneca Copper Corp, 227 Mich 592, 601 [199 NW 652 (1924)]." (Emphasis added.) *Siebert v Northport Point Cottage Owners' Association,* 378 Mich 661, 674; 148 NW2d 790 (1967).

The WCAB accepted and found as a matter of fact that plaintiff was capable of performing only favored work. This finding conclusively established that plaintiff had met her burden of proof as to the right of compensation; she was unable "to work and earn wages in the employment at which [she] was engaged when injured". *Siebert, supra.* Because no post-injury wage-earning capacity was established, plaintiff was not faced with a burden to overcome the corollary presumption of continued wage-earning capacity. Therefore, the only remaining burden was on defendants to prove that plaintiff still had a wage-earning capacity. See *Hood v Wyandotte Oil & Fat Co,* 272 Mich 190, 193; 261 NW 295 (1935); 2 Larson, Workmen's Compensation Law, § 57.51, p 10-122.

Fourth, neither the WCAB nor the Court of Appeals in this case appeared to fully grasp three fundamental legal propositions underlying and controlling this case. The first, and perhaps most important, is that the WCAB in finding that plaintiff was capable of performing only favored work had conclusively established plaintiff's disability

and right to compensation. Significantly, this right persists unless cut off by a legal bar. The second legal proposition is that only wages from regular employment create a bar; wages from favored work, when actually paid, toll the right to compensation but when no longer paid neither toll nor bar compensation. The third legal proposition is that inability to continue favored work, where that inability arises from a supervening event for which the worker is not responsible, does not create a legal bar.

We note that neither the WCAB nor the Court of Appeals shared this Court's express concern about the possible bar of an overlapping cancer redemption. Nonetheless, we have shown that there is in both law and fact no overlap or duplication here that might bar plaintiff's entitlement to compensation.

In sum, the fundamental posture of this case is that: (1) plaintiff has established her right to compensation for the work-related hand injury and (2) that right is neither barred by her subsequent favored work wages nor her later inability to continue such favored work because a supervening event not in her control. Further, the redemption of a legally non-work-connected cancer does not duplicate the compensation for a work-connected injury. Therefore, a right to compensation was established and no bar exists to preclude that right.

## B. Post-Hand-Injury Cancer

The final subquestion under the second limited issue is, "what effect did plaintiff's * * * subsequently disabling cancer have on her right to

benefits". The answer is that the "subsequently disabling cancer" had no effect whatsoever on plaintiff's right to compensation for her prior hand injury. The case of *Lynch v Briggs Manufacturing Co,* 329 Mich 168; 45 NW2d 20 (1950), is directly on point.

In *Lynch* as in the instant case, plaintiff was injured at work in a factory, received total compensation for a period and then returned to favored work at his skilled rate of pay. Thereafter, plaintiff was struck and injured by an automobile while standing in a street car safety zone. Plaintiff was disabled from continuing his favored work.

Defendant in *Lynch* appealed a grant of compensation, averring "that Lynch was not entitled to compensation because his present loss of earnings is due to a disability unassociated with his employment", 329 Mich 168, 171; defendant in the instant case similarly argues that since the non-work-related cancer disability has prevented plaintiff from continuing her favored work, her benefits should be barred.

This Court in *Lynch* held:

"Lynch [plaintiff] at the time of hearing was not physically capable of performing the favored work. He was prevented from doing so by events not under his control. Yet he was still totally disabled in his skilled employment because of his occupational injury of 1946. *Supervening events, stopping his favored work and not attributable to him, will not defeat his compensation* as a skilled employee." (Emphasis added.) *Lynch, supra,* 172.

See also *Hansel v Chrysler Corp,* 58 Mich App 173; 227 NW2d 276 (1975); *Medacco v Campbell, Wyant*

& Cannon Foundry Co, 48 Mich App 217; 210
NW2d 360 (1973).[10]

Because the above rules are well established, it
is difficult to understand the contrary relevance
ascribed to the intervening event by the WCAB.
The WCAB stated:

"While she remains partially disabled * * * an event
intervened in no way imputable to the employer, and
the law * * * directs that we award only those benefits
to which plaintiff was entitled prior to the larynx
cancer interrupted [sic] her work career—in this case,
none."[11]

The Court of Appeals, however, found the WCAB
had erred as to its above finding and stated:

"An independent, intervening event, which follows a
personal injury arising out of and in the course of
employment, does not alone justify the denial, suspen-

[10] The result can be different, of course, in a case in which a
plaintiff is physically able to perform favored work and has refused.
See Lynch, supra, p 172; Hope v Welch Grape Juice Co, 46 Mich App
128, 129; 207 NW2d 476 (1973).

[11] The WCAB cited Dunavant v General Motors Corp, 325 Mich 482;
38 NW2d 912 (1949), and Dalton v Candler-Rusche, Inc, 65 Mich App
282; 237 NW2d 290 (1975), for the proposition that when an event
intervenes which is not the fault of the employer, only those benefits
due prior to that event are awardable. The WCAB went on to hold
that because no benefits were due prior to plaintiff's cancer (since she
was performing favored work at no wage loss), plaintiff was entitled
to no benefits now.

In Dunavant, an employee injured his hand, performed favored
work and later suffered a recurrent pulmonary tuberculosis which
totally prevented his further employment. Plaintiff Dunavant had
been receiving compensation for his hand injury during his favored
work and sought an increase because his non-work-related tuberculo-
sis totally disabled him. This Court found he was entitled to no such
increase.

This Court in Lynch, supra, did not find the holding in Dunavant to
obviate the necessity of the payment of benefits. While Dunavant is
somewhat distinguishable, it is not completely so and to the extent it
is inconsistent with our present opinion it is hereby overruled.

Dalton is inapplicable to the instant case for the reason discussed in
footnote 9, supra.

sion, reduction, or increase of disability benefits for a continuing work-related injury. *In the present case, plaintiff's throat cancer itself would not alter her right to collect workers' disability benefits if her hand injuries in fact diminished her wage-earning capacity."* (Emphasis added.)

We agree with this statement of the Court of Appeals and specifically find that plaintiff's post-hand-injury cancer does not adversely impact plaintiff's present right to benefits.[12]

## IV. CONCLUSION

It is uncontested that plaintiff is currently disabled from employment due to her 1967 hand injury. None of the post-hand-injury occurrences presently before this Court adversely impact her right to benefits therefor.

---

[12] We note one further point. The extent of a claimant's disability is again a question of fact to be decided in the administrative rather than judicial arena. 3 Larson, Workmen's Compensation Law, § 80.20.

The WCAB herein expressly affirmed the findings of fact of the Administrative Law Judge but set aside the award of benefits "as a matter of law". At the same time, however, the WCAB ignored the prior finding of fact of the Administrative Law Judge that disability was total by its labeling of plaintiff's disability as partial.

There is nothing in the opinion of the WCAB explaining the basis for this reversal of the initial factual finding. To the extent that it was premised on plaintiff's post-hand-injury ability to perform favored work, however, that finding was erroneously based on a legally impermissible consideration. *Allen v National Twist Drill & Tool Co,* 324 Mich 660, 663; 37 NW2d 664 (1949).

We reiterate that disability is measured by ability to perform the work in which a claimant was engaged when the injury occurred. If a post-injury wage-earning capacity is established, this is certainly a consideration in determining both the present amount of compensation due as well as the concomitant extent of disability. See *MacDonald v Great Lakes Steel Corp,* 274 Mich 701; 265 NW 776 (1936), as compared with *MacDonald v Great Lakes Steel Corp,* 268 Mich 591; 256 NW 558 (1934).

Favored work, however, is not an appropriate consideration in that determination, *Allen, supra.* Favored work is only properly considered *during* its actual performance as a set-off under MCL 412.11; MSA 17.161.

Reversed and remanded to the WCAB. Costs to appellant.

KAVANAGH, LEVIN, and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.

COLEMAN, C.J. *(concurring in part, dissenting in part)*. Between the loose language employed in the Worker's Disability Compensation Act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* and the interpretations variously superimposed upon it, we frequently find ourselves mired in obscure, if not meaningless, catch-words. Some such words have lost in transit, through undiscriminating application, any specific meaning. Such is the basic problem in this case. The words "favored work" have evolved into meaning almost anything or nothing. As an analytical tool, they are inadequate as employed in the majority opinion. It is the indiscreet use of these words which leads to the partial dissent.

We concur in the majority's holding, given the facts of this case, that the redemption of plaintiff's claim for benefits deriving from an alleged occupational disease (cancer of the larynx) does not preclude recovery on her claim for benefits for pre-cancer occupational injuries. Pursuant to the language of the redemption agreement, entered into without any determination of liability, the occupational nexus issue remains unresolved and the dispute settled. Thus, we agree that there is no factual or legal basis upon which the redemption could be said to preclude benefits for the pre-existing hand injuries. However, we *do* not agree that *Herrala v Jones & Laughlin Steel Corp,* 43 Mich

App 154; 203 NW2d 752 (1972), is reliable authority for this decision.[1]

Our colleagues' analysis of the legal and factual effects of plaintiff's post-injuries work.history and the intervention of cancer upon her entitlement to worker's disability benefits is based upon the use of the "favored work" concept as a net to catch any and all work performed subsequent to an injury for the same employer. The Workmen's Compensation Appeal Board (WCAB) stated that plaintiff's post-injuries employment was "favored, vis-à-vis her pre-injuries work capacity". Accepting this finding of fact and applying previous decisions of this Court holding that favored work cannot establish a wage-earning capacity,[2] the majority reversed the WCAB and the Court of Appeals and held that as a matter of law plaintiff did not (indeed, *could not)* establish a wage-earning capacity in her post-injury employment. Therefore, in our colleague's opinion, the termination of that "favored work" because of subsequent cancer necessarily left plaintiff with a compensable disability.

The problems with the development of this case are basically twofold. First, there is the WCAB's assertion that plaintiff's post-injuries employment

[1] *Herrala* involved a claimant who suffered work-related injuries in 1954 and 1959. Two claims were filed in 1959, but benefits were only awarded for the 1954 injury. That award was redeemed in 1965 and claimant refiled for the 1959 injury in 1966. The Court of Appeals awarded full benefits, distinguishing *Harrison v Lakey Foundry Co,* 361 Mich 677; 106 NW2d 521 (1960), on the grounds that *Harrison* only prohibits double collection of benefits in the same period of time.

The *Herrala* Court misread *Harrison.* The thrust of *Harrison* was that there could not be two recoveries for the loss of one earning capacity even though there were two distinct work-related injuries. In this case, if Mrs. Powell's cancer had been first determined to be work-related and then redeemed, pursuant to *Harrison* she would not have a viable claim for benefits due to her hand injuries.

[2] *Evans v United States Rubber Co,* 379 Mich 457, 465; 152 NW2d 641 (1967), *Lynch v Briggs Manufacturing Co,* 329 Mich 168, 172; 45 NW2d 20 (1950).

was "favored, vis-à-vis her pre-injuries work capacity". This bald statement is not supported by any analysis which would indicate that plaintiff's post-injuries employment was not regular employment with ordinary conditions of permanency. It may be that the WCAB meant that because plaintiff could not perform her pre-injuries employment, her post-injuries employment was necessarily favored work. Conversely, the WCAB may have determined that the post-injuries employment was similar to odd-lot, nondescript or "manufactured" work. We do not know the meaning of the WCAB's label.

Moreover, fitting post-injury employment into favored or nonfavored categories provides little assistance in the resolution of this type of situation. The proper focus of analysis in such cases has been dictated by the Legislature. The set-off proviso of § 371 reads:

"The compensation payable, when added to his *wage earning capacity* after the injury in the *same or another employment,* shall not exceed his average weekly earnings at the time of such injury." MCL 418.371; MSA 17.237(371). (Emphasis added.)

The relevant inquiry when determining the amount of compensation to which a disabled worker is entitled is whether the employee's wage-earning capacity has been impaired and, if so, to what extent. The language quoted above clearly says that a claimant may be disabled and still have an earning capacity "in the same or another employment". The WCAB did not address itself to this crucial issue of fact; thus we would remand to the WCAB for a determination of whether plaintiff's wage-earning capacity had been impaired and, if so, to what extent. Entitlement to benefits should be computed accordingly.

Secondly, we cannot agree that, as a matter of law, post-injury employment in a different kind of work can never establish an earning capacity. When determining whether a disability is compensable, the issue is the same whether post-injury work is labeled favored or nonfavored: has claimant's wage-earning capacity been impaired and, if so, to what extent? If claimant's general disability (as distinguished from scheduled disabilities) still allows him/her to perform a regularly recognized job with ordinary conditions of permanency, then that fact is relevant and material to ascertaining the degree of impairment of earning capacity.

Similarly, even if post-injury employment is necessarily less strenuous because of the injury, the fact that claimant is able to work in some capacity should be considered by the finder of fact.

We would hold that any post-injury earnings create a rebuttable presumption of current wage-earning capacity equal to the amount of said earnings.

However, such a presumption may be rebutted and overcome by other factors. Consideration also should be given to physical and mental abilities, education, training, age, availability of employment within these abilities, and whether any post-injury employment was a regular job with ordinary conditions of permanency or more similar to odd-lot, nondescript or "manufactured" work. Claimant should be allowed an opportunity to show that the post-injury employment is an unreliable basis for measuring wage-earning capacity or to establish incapacity through independent evidence.

We would remand this case to the WCAB for proceedings consistent with this opinion. The effect of plaintiff's cancer upon her wage-earning capac-

ity should not be considered because it is legally unrelated to plaintiff's claim.

I

The employer-defendant, Casco Nelmor Corporation, produced exterior automobile mirrors. On March 16, 1967, while operating an automatic buffing machine, plaintiff was injured when a piece of stock flew out of the loader and struck her left wrist. Disability compensation was paid during her recovery period. Ignoring medical advice to submit to an operation, plaintiff returned to work after about two months. Because of the injury, diagnosed as De Quervain's disease, she could not manipulate her left hand sufficiently to operate the buffer, so she was assigned to a burring wheel.

Plaintiff's task was to debur, or grind, sharp edges from the mirrors by pressing them against the wheel. The weakness in her left hand caused her to compensate by pressing harder with her right hand and thumb. Consequently, by November 16, 1967 plaintiff had developed a "trigger thumb" on her right hand and was disabled until March of 1968. In the interim, she underwent surgery for the thumb condition and received disability benefits.

Upon returning to work, plaintiff was assigned to a bagging or packing job which entailed placing the finished parts in boxes prior to shipping. Plaintiff finally consented to surgery upon her left wrist in September of 1968. She returned to work in January of 1969 and briefly performed a clerical job before returning to the packing position. Periodically, the employer would try plaintiff at the burring wheel, but the same problems (pain and swelling of the hands) quickly reoccurred. Thus,

she remained a packer where she experienced no further hand problems until the termination of her employment in April of 1972. From her change of work in 1967 until she quit in 1972 because of cancer, her wages increased from their pre-injury level.

Plaintiff began to experience problems with her throat in 1971, which were finally diagnosed as cancer of the larynx. A laryngectomy was performed in August of 1971. Plaintiff returned to work after the operation but soon had to quit. The environment of defendant's plant was unsuitable to plaintiff. She now breathes through an opening in her neck, thus by-passing the filtering mechanisms of the nose and throat of a normal person. Eventual medical advice was to discontinue working in such an atmosphere. Plaintiff testified that her voluntary termination of employment was in no way occasioned by a hand problem.

A compensation claim was filed alleging that the factory's pollutants caused her cancer and claiming work-related injuries to both hands. The cancer claim was redeemed without a finding of causation and the administrative law judge found plaintiff totally disabled because of work-related injuries to her hands. The WCAB found that plaintiff was partially disabled, but that the disability was noncompensable because her post-injuries employment was terminated by a supervening, independent, nonoccupational cause (cancer). Because she suffered no wage loss, even though partially disabled because of the hand injuries, no benefits were awarded. The WCAB said, "Here an event intervened in no way imputable to the employer."

The Court of Appeals affirmed on the ground that no impairment of earning capacity was established by the plaintiff.

II

Analysis of this case must begin with the recognition that plaintiff is partially disabled because of a "personal injury arising out of and in the course of [her] employment".[3] The broad question then becomes whether that disability is compensable. Compensability (or amount of benefits, if any) turns on the impairment of wage-earning capacity issue.[4] The rate of compensation is set at a percentage of claimant's average weekly wage loss, MCL 418.351, 418.361; MSA 17.237(351), 17.237(361), and the weekly wage loss must "fairly represent the proportionate extent of the *impairment of his earning capacity* in the employment in which he was working at the time of the injury". MCL 418.371(1); MSA 17.237(371)(1). (Emphasis added.)

The WCAB opinion and the record reveal that

[3] MCL 418.301; MSA 17.237(301). There is no dispute that the injuries are work-related. Furthermore, plaintiff is disabled within the meaning of the statute. " 'Disability' means the state of being disabled from earning full wages at the work in which the employee was last subject to the conditions resulting in disability." MCL 418.401(a); MSA 17.237(401)(a).

[4] In *Pigue v General Motors Corp*, 317 Mich 311, 316; 26 NW2d 900 (1947), it was said:

"The principle upon which compensation is awarded is, that the employee has suffered a loss in his wage-earning capacity as a result of a compensable injury suffered while in the employ of his employer."

The validity of this statement is borne out by the language of MCL 418.351, 418.361, 418.371; MSA 17.237(351), 17.237(361), 17.237(371). A more complete explanation was provided by *Leskinen v Employment Security Commission*, 398 Mich 501, 508-509; 247 NW2d 808 (1976), where the Court said:

"*Eligibility* for benefits under the act is established when an employee proves that he has suffered a personal injury which arose 'out of and in the course of his employment'. * * * It is only after this threshold determination that the *amount* of benefits is then computed. The statutes and the prior decisions of this Court make apparent the fact that 'earning capacity' is a factor in calculating the *amount of benefits,* not whether a claimant has suffered a work-related *personal injury."*

plaintiff's earning capacity as an operator of a buffing or burring machine is definitely impaired, probably totally. However, the compensability of plaintiff's disability is limited by the set-off proviso of § 371, which reads:

"The compensation payable, when added to his *wage earning capacity after the injury in the same or another employment,* shall not exceed his average weekly earnings at the time of such injury." MCL 418.371(1); MSA 17.237(371)(1). (Emphasis added.)

Thus, once the finder of fact has determined that a claimant is disabled by a work-related personal injury, analysis must focus upon claimant's post-injury wage-earning capacity to determine the rate of compensation, if any, which is due. Wage-earning capacity in other work, as well as in the pre-injury employment, must be considered.

Conceptually, then, the act (MCL 418.101, *et seq.;* MSA 17.237[101], *et seq.)* calculates benefits by comparing actual, pre-injury earnings with post-injury earning capacity.[5] These two elements of the equation are different. Actual wages are a definite, fixed quantity. Wage-earning capacity, however, is a more nebulous, theoretical concept. Earning capacity has many component parts of which actual earnings are merely one. As Professor Larson states:[6]

---

[5] As explained by Professor Larson, 2 Larson's Workmen's Compensation Law, § 57.21, this is the same procedure used by most other states to calculate the degree of disability, not the amount of benefits owed.

[6] As noted in footnote 5, *supra,* Professor Larson is speaking about earning capacity and post-injury employment in terms of calculating degree of disability. The Michigan act defines disability as the inability to perform the work claimant was doing at the time of injury. MCL 418.401(a); MSA 17.237(401)(a). Earning capacity relates only to the amount of benefits payable. Yet, in terms of the impact of post-injury employment upon the evaluation of post-injury earning capacity, the language set out in the text is relevant.

"It is uniformly held, therefore, without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of some actual post-injury earnings equaling or exceeding those received before the accident. *The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity."* 2 Larson's Workmen's Compensation Law, § 57.21, pp 10-28—10-37. (Emphasis added.)

Evaluation of the degree of impairment of a disabled worker's earning capacity requires consideration of a myriad of factors. Yet, it is reasonable to presume that if a claimant has actual earnings after a disabling injury, then an earning capacity exists commensurate with those wages. See, *e.g., Wieland v Dow Chemical Co,* 334 Mich 427; 54 NW2d 708 (1952), *MacDonald v Great Lakes Steel Corp,* 274 Mich 701; 265 NW 776 (1936). Given that actual wages are but one part of a claimant's earning capacity, however, it is also fair to conclude that this presumption may be rebutted by showing that these earnings are an unreliable basis for estimating capacity. For example, if the employment was "manufactured" work, temporary, sporadic, nondescript, or of the "odd-lot" variety, then the force of the presumption is diluted. See, *e.g., Hood v Wyandotte Oil & Fat Co,* 272 Mich 190; 261 NW 295 (1935). See also, 2 Larson's Workmen's Compensation Law, §§ 57.21, 57.50 *et seq.* Similarly, evidence independently establishing incapacity, such as the claimant's actual physical condition after the injury, can also rebut this presumption. See, *e.g., Shaw v General Motors Corp,* 320 Mich 338; 31 NW2d 75 (1948), 2

Larson's Workmen's Compensation Law, §§ 57.30 *et seq.*

Post-injury earnings are the clearest evidence of claimant's earning capacity. This is particularly true when the post-injury work is in regularly recognized employment with ordinary conditions of permanency. It has been previously stated that:

"When an employee accepts work and receives wages therefor in a recognized regular employment, with the ordinary conditions of permanency, as here, there is no room for argument that he has not thereby established a present earning capacity equal to such wages, whatever may be his physical condition." *Markey v SS Peter & Paul's Parish,* 281 Mich 292, 299-300; 274 NW 797 (1937). See, also, *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966).

Consequently, we would create a rebuttable presumption that a claimant has an earning capacity equal to his/her post-injury wages. This presumption can be overcome by showing that these wages are an unreliable basis for measuring earning capacity or by independently establishing impairment of capacity.

## III

At least two cases hold that favored work does not establish an earning capacity. *Evans v United States Rubber Co,* 379 Mich 457, 465; 152 NW2d 641 (1967), *Lynch v Briggs Manufacturing Co,* 329 Mich 168, 172; 45 NW2d 20 (1950). While the persuasive force of these opinions is open to question,[7] we do agree that the existence of post-injury

[7] In *Lynch,* a mere plurality opinion, the Court cites *Smith v Pontiac Motor Car Co,* 277 Mich 652, 657; 270 NW 172 (1936), for the proposition that "Lynch's favored work after his total disability did not, however, establish his wage-earning capacity". There is no fur-

employment cannot be solely determinative of the earning capacity issue. If post-injury earnings were determinative, then the unscrupulous employer could unfairly avoid paying benefits.[8]

However, the procedure of characterizing such employment as favored or nonfavored and then saying that as a matter of law no wage-earning capacity can ever be established in favored work undermines the function of § 371's set-off proviso. While not solely determinative, any type of post-

---

ther analysis or discussion of this point in *Lynch*. A close reading of the *Smith* case, however, reveals that it was misread by the *Lynch* Court. *Smith, supra,* 656-658, merely says that post-injury earnings are but one of the many factors constituting earning capacity and that such earnings are not necessarily determinative of earning capacity. Post-injury employment *could* establish an earning capacity, but it does not necessarily do so. No distinction was made between favored and nonfavored work.

The *Evans* case creates even more confusion. There, the defendant admitted in a brief before the WCAB that claimant's post-injury job " 'was favored due to his alleged inability to do his regular job' ". *Evans, supra,* 465. Yet, because the lighter work "was a regularly recognized job which existed and had been done regularly by others before and after plaintiff did it", the WCAB held that plaintiff had "established a wage-earning capacity in a recognized common labor occupation" and denied benefits. *Evans, supra,* 464. Citing no authority (not even *Lynch),* the Court held that performance of favored work *(i.e.,* less strenuous post-injury work) cannot establish a wage-earning capacity even if it is regularly recognized employment with ordinary conditions of permanency.

There is little wisdom in the utilization of such an absolute, all-encompassing rule. We prefer a more flexible and balanced approach which allows the finder of fact to consider any post-injury employment when determining the extent of impairment of earning capacity.

[8] See, *e.g., Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 423; 145 NW2d 40 (1966), where the Court said:

"It is not difficult to perceive, however, that an ill-intentioned employer desirous of avoiding compensation payments could rehire an injured and disabled employee, establish his capacity to earn as much or more than before his injury and terminate his employment. Then, if the bare elements of proof of what the employee was paid were construed as establishing his 'earning capacity' the whole purpose of the act would be vitiated.

"*Thus, the method of determining the employee's earning capacity, as that term is used in the act, is a complex of fact issues which are concerned with the nature of the work performed and the continuing availability of work of that kind, and the nature and extent of the disability and the wages earned."* (Emphasis added.)

injury employment is relevant and material to finding whether claimant has a "wage earning capacity after the injury in the same or another employment". Consequently, we support the principle that any post-injury earnings create a rebuttable presumption of earning capacity commensurate with said wages.

A further objection to the use of the favored-nonfavored dichotomy is the lack of a simple, coherent definition of favored work. We have not unearthed any workable definition of the concept and none has been cited to us. A perusal of the cases suggests that when a worker is assigned to less strenuous work after an occupational injury, this new job constitutes favored work. In the typical case, almost any post-injury employment would be categorized as favored and be prevented from establishing an earning capacity by *Lynch, Evans,* and the majority opinion herein. However, a determination of whether performance of certain work establishes an earning capacity should depend upon consideration of all relevant factors including the nature, permanency and availability of such work evaluated in light of the claimant's disabilities.

Although we agree that in many cases post-injury employment would not establish a wage-earning capacity because of other factors (medical incapacity, manufactured work, odd-lot doctrine, such work generally unavailable, etc.), this is no reason to exclude post-injury work from any consideration of the finder of fact. A far better approach, and one which we espouse, is to avoid useless labels and to confront the task of ascertaining the extent of impairment of claimant's earning capacity. We would end the practice of characterizing post-injury work by catch-words of no reliability in deter-

mining the compensability of occupational injuries. So far as *Lynch* and *Evans* conflict with this opinion, we would overrule the cases.

## IV

The majority opinion states that "the 'subsequently disabling cancer' had no effect whatsoever on plaintiff's right to compensation for her prior hand injury". We agree that the intervention of cancer has no legal or factual bearing on plaintiff's entitlement to benefits. As the Court of Appeals stated:

"An independent, intervening event, which follows a personal injury arising out of and in the course of employment, does not alone justify the denial, suspension, reduction, or increase of disability benefits for a continuing work-related injury. In the present case, plaintiff's throat cancer itself would not alter her right to collect workers' disability benefits if her hand injuries in fact diminished her wage earning capacity."

Plaintiff's entitlement to benefits should be evaluated in light of her pre-cancer wage-earning capacity.

We would remand this case to the WCAB for further proceedings. Focus should be upon plaintiff's post-injuries and pre-cancer earning capacity. We would hold that plaintiff's post-injuries employment created a rebuttable presumption of earning capacity commensurate with those wages. Evidence should be accepted which may show that this employment is an unreliable basis for measuring earning capacity or which independently establishes incapacity.

We would remand to WCAB for proceedings consistent with this opinion.

FITZGERALD and RYAN, JJ., concurred with COLEMAN, C.J.